**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-50782

JAMES E TRUE, Individually and on Behalf of All Other Similarly Situated Persons

Plaintiff-Appellant

v.

JOSUE ROBLES; JOHN H. MOELLERING; JOHN P. ABIZAID; PATRICIA C. BARRON; JOHN D. BUCKELEW; THOMAS P. CARNEY; DANIEL W. CHRISTMAN; EILEEN M. COLLINS; STEPHEN B. CROKER; LESLIE G. DENEND; THOMAS B. FARGO; FREDERICK M. HAMILTON; MARCELITE J. HARRIS; WILLIAM J. HYBL; JAY JOHNSON; LESTER L. LYLES; MICHAEL E. RYAN; JOSEPH C. STRASSNER

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. SA-08-CA-53-OG

Before REAVLEY, DAVIS, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This putative class-action suit raises a novel question concerning the fundamental legal structure of a peculiar entity known as a reciprocal insurance exchange, which is essentially an insurance company cooperatively owned by those it insures, known as "members" or "subscribers." Specifically, we must inquire into the nature of the legal relationship between the board of directors

of the United Services Automobile Association ("USAA"), a large reciprocal insurance exchange, and its subscribers, and determine what legal duties are created by that relationship. James True, a USAA subscriber, alleges that the USAA board of directors breached fiduciary and contractual duties owed to individual members by retaining billions of dollars in unallocated surplus funds, and not allocating those funds to the USAA savings accounts of individual subscribers. True contends that the unallocated surplus vastly exceeds the amount required by applicable state regulations or needed to ensure USAA's financial stability.

The district court, applying Texas law, dismissed the suit, holding that: (1) the board did not owe a fiduciary duty to USAA's individual members, but rather only to the entity itself, and therefore that individual members could not pursue claims for breach of fiduciary duty or constructive fraud against the board; (2) True's subscriber agreement with USAA was not a contract between True and the board, and thus could not serve as the basis for a breach of contract claim; and (3) True had failed to allege facts sufficient to avoid the application of the business judgment rule to the board's decision. True contends that the district court erred with respect to each of these holdings.

For the reasons discussed in greater detail below, we hold that there is no fiduciary or contractual relationship between individual subscribers and the USAA board of directors, and therefore that True has failed to state a claim for relief. Because we hold that True has failed to allege that the board violated any legal obligation owed to individual subscribers, we do not reach the question of whether the board's decision to retain billions of dollars in unallocated surplus funds, rather than allocate those funds to the USAA savings accounts of

individual subscribers, should be accorded business judgment deference. Accordingly, we AFFIRM the judgment of the district court.

## I. Background

### A. Reciprocal Insurance Exchanges

#### 1. *In General*

The parties refer to USAA as a "reciprocal interinsurance exchange," but such an association is also referred to as a "reciprocal insurer," a "reciprocal insurance exchange," an "interinsurance exchange," an "interindemnity exchange," or a "reciprocal." The most commonly used name appears to be "reciprocal insurance exchange." A reciprocal insurance exchange is essentially an insurance company cooperatively owned by those it insures. *See Kiepfer v. Beller*, 944 F.2d 1213, 1216 (5th Cir. 1991); *Wilson v. Marshall*, 218 S.W.2d 345, 346 (Tex. Civ. App. 1949). Through such an entity, members "undertake to indemnify each other against certain kinds of losses by means of a mutual exchange of insurance contracts, usually through the medium of a common attorney-in-fact appointed for that purpose by each of the underwriters . . . ." 43 Am. Jur. 2d *Insurance* § 81 (2008). Thus, in its pure form, a reciprocal insurance exchange is a web of contractual relationships between subscribers who agree to insure one another, consummated through a common agent with power of attorney. *See* Dennis F. Reinmuth, *The Regulation Of Reciprocal Insurance Exchanges* 11 (1967) ("[C]onceptually a reciprocal consists of a series of private contracts among the members or subscribers, each agreeing to insure one another, the exchange of insurance being consummated through the common agent of the members, the attorney-in-fact, and by means of the subscriber's agreement of power of attorney.").

## 2.    *A Brief History*

When reciprocal insurance exchanges were first established in the late nineteenth century, subscribers had several, not joint, liability on all of the exchange's liabilities.  *See Lee v. Interinsurance Exch. of the Auto. Club of S. Cal.*, 50 Cal. App. 4th 694, 702–03 (Cal. Ct. App. 1996) (citing *Delos v. Farmers Ins. Group*, 93 Cal. App. 3d 642, 652 (1979); 2 Couch on Insurance 2d § 18.11, at 613 (1984); Reinmuth, *supra*, at 10–20).  The exchange had no capital, and funds for the payment of losses were collected from subscribers after losses occurred. *Id.* at 703 (citing *Mitchell v. Pac.Greyhound Lines*, 33 Cal. App. 2d 53, 59–60 (1939); Couch, *supra*, §§ 18:11, at 614–15; Reinmuth, *supra*, at 2).

To avoid delays, exchanges began collecting advance annual deposits, which were kept in a separate account for each subscriber, with the subscriber's pro rata share of losses and expenses being deducted as needed.  If a subscriber's account had a positive balance at the end of the year, that amount became part of a subscriber's "savings" or "surplus," and was either distributed to subscribers or held until the subscriber withdrew from the exchange.  If the balance was negative, the subscriber could be assessed for a specified maximum amount beyond their deposit.  *Id.* at 703 (citing Couch, *supra*, §§ 18:26–18:30, at 633–641; Reinmuth, *supra*, at 2, 30–31).

The original concept of reciprocal insurance contemplated the allocation of all surplus to the accounts of individual subscribers, but over time it became customary for reciprocals to accumulate unallocated surplus, which was held perpetually in anticipation of catastrophic losses and not subject to withdrawal by departing subscribers.  However, the use of such separate surplus accounts is merely an internal bookkeeping device; all assets are held in a common fund,

and there is no physical segregation of assets to individuals. Reinmuth, *supra*, at 31. As a result of the accumulation of surplus assets, many reciprocals, including USAA, began issuing nonassessable policies, under which subscribers had no contingent liability for claims, expenses, or losses of the exchange. *See Lee*, 50 Cal. App. 4th at 703–04 (citing Reinmuth, *supra*, at 2, 18, 30–37, 186–87). True holds such a nonassessable policy from USAA.

### 3. Under Texas Law

The Texas Insurance Code specifically authorizes the establishment of reciprocal insurance exchanges and establishes rules relating to their operation. *See* Tex. Ins. Code Ann. § 942 (2008); *see also* 44 Tex. Jur. 3d Insurance Companies § 57. The statute provides that "subscribers of this state may exchange reciprocal or interinsurance contracts with other subscribers of this state or of another state or country to provide indemnity among those subscribers for a loss for which insurance coverage may be obtained under other law." Tex. Ins. Code Ann. § 942.002(a).

A "subscriber" is defined as "an individual, partnership, or corporation who, through an attorney in fact, enters into a reciprocal or interinsurance contract." *Id.* § 942.001(4). A "reciprocal or interinsurance contract" is defined as "an insurance policy or other contract that provides indemnity among a group of subscribers for certain losses," *id.* § 942.001(3), and the statute provides that such a contract may be executed by an attorney in fact appointed by the subscribers of an exchange, *id.* § 942.051.

The statute requires subscribers, through an attorney in fact, to file a declaration specifying the name of the proposed exchange, the kinds of insurance to be provided, a copy of the power of attorney or other authorization of the

attorney in fact, the location of the exchange's offices, and an affidavit stating that the capital and surplus is the bona fide property of the exchange and that the information in the declaration is true. *Id.* § 942.053. The statute imposes financial requirements on exchanges relating to the maintenance of sufficient unencumbered surplus and reserves. *Id.* § 942.155. "The primary purpose of [such requirements are] to provide policyholder security in the event of adverse or catastrophic loss experience." Reinmuth, *supra*, at 119.

## B. The USAA Bylaws, Subscriber Agreements, and Insurance Policies

The USAA bylaws state that USAA "is a reciprocal interinsurance exchange," and that "[t]he purpose of USAA is to provide insurance coverages and other financial products and services and engage in other activities for the benefit of its members, associates and their families as shall be determined by the board of directors." The bylaws provide that members are entitled to voting rights that may be exercised to elect members of the board of directors at the USAA annual meeting, and that:

> [t]he business management and affairs of USAA shall be under the discretion and control of the board of directors . . . and the board of directors shall have authority to authorize contracts, incur liabilities, expend or invest funds, and such other matters and things connected with the conduct of USAA as they may determine, subject always, however, to the right of the members to modify, alter or withdraw the powers of the board of directors. . . .

Article XII of the bylaws specifically addresses the issue of surplus funds. Under the section heading "Statutory and Financial Requirements," the bylaws state that "[t]he surplus accruing from the operation of USAA shall be allocated and/or segregated in the Surplus Account as required by regulatory authorities and as the board of directors may determine." Under the section heading

6

"Distribution to Members," the bylaws state that "[t]he Surplus in excess of that required by regulatory authorities or for the financial stability of USAA as determined by the board of directors shall be returned to members under the rules formulated by the board of directors."

Under the bylaws, each subscriber is required to execute a power of attorney, also known as a subscriber agreement, to the attorney in fact designated by the board of directors. The subscriber agreement is entitled "Power of Attorney," and states that the subscriber:

> agrees with other subscribers . . . to obtain . . . benefits by the exchange of private contracts of indemnity, and to that end I . . . appoint . . . [the person designated by the board of directors] . . . my attorney . . . [t]o exchange with other subscribers . . . indemnity to the extent determined by the Exchange, and to subscribe and deliver all proper contracts to do and perform every other thing that I could do in respect to such contracts so exchanged . . . .

However, the power vested in the attorney in fact is to be exercised "only in accordance with the decisions of the Board of Directors." The subscriber agreement contains a provision stating that "I hereby adopt as part hereof the By-Laws of the Exchange now hereafter effective." It also contains a provision limiting a subscriber's right to recover on any judgment against the board of directors: "I agree that no right of recovery shall ever exist in my favor under the policy contracts applied for or hereafter applied for, or otherwise arising out of my subscribership, against any subscriber, officer, director or agent of the Association and that I will look solely to the assets of the Exchange for payment of any sum owing me, whether before or after final judgment." The reverse side of the subscriber agreement contains "An Explanation of the Power of Attorney," stating that:

7

[t]he Association is that form of an insurance concern known as a reciprocal exchange. The members act collectively through attorneys-in-fact, insuring each of the members. The power of attorney is the legal device whereby the contracts may be executed thus eliminating the necessity of all the members signing each contract.

The insurance policies issued by USAA also discuss the rights and liabilities of USAA subscribers. The policies state that "[by] purchasing this policy you are a member of USAA and are subject to its bylaws." The policies specifically discuss the allocation of surplus funds:

The USAA Board of Directors may annually allocate a portion of USAA's surplus to Subscriber's Savings Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## II. Standard of Review

This court reviews de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff," *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). Dismissal is appropriate when the plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face" and has failed to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 555, 570 (2007).

## III. Analysis

The district court held that the board did not owe a fiduciary duty to USAA's individual members, but rather only to the entity itself, on the grounds that the legal relationship between the board of directors of a reciprocal

8

insurance exchange and its subscribers is analogous to the relationship between the board of a corporation and its shareholders. In the latter relationship, under Texas law, the directors have a fiduciary duty only to the corporation as a whole, not to individual shareholders, unless a contract or confidential relationship exists between them in addition to the corporate relationship. *See Gearhart Indus., Inc. v. Smith Intern., Inc.*, 741 F.2d 707, 721 (5th Cir. 1984) (citing 15 Tex. Jur. 3d Corporations §§ 165–171 (1981)); *Somers v. Crane*, Nos. 01-07-00754-CV, 01-08-00119-CV, --- S.W.3d ----, 2009 WL 793751, at *4 (Tex. App. March 26, 2009); *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App. 2006); *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. 1997). True argues that it is inappropriate to draw this analogy for the purpose of analyzing the nature of the legal relationship between the board of a reciprocal insurance exchange and its subscribers because of fundamental differences in the structure of reciprocal insurance exchanges and corporations. Specifically, a reciprocal insurance exchange is not a separate person, like a corporation, that can sue its directors and officers, but rather an association of contracting parties represented in their dealings with each other by an attorney in fact.

The relevant Texas statutes do not address whether the directors of a reciprocal insurance exchange owe a fiduciary duty to individual subscribers, and we are not aware of any cases, in Texas or elsewhere, that do so.[1] We must

---

[1] True contends that courts in other states, including California, have held that the board of a reciprocal insurance exchange owes fiduciary duties to individual subscribers. True misrepresents these holdings. For example, True includes the following quotation from *Tran v. Farmers Group, Inc.*, 104 Cal. App. 4th 1202 (Cal. Ct. App. 2002), *as modified on denial of reh'g*, (Jan. 27, 2003), in his brief:

> Respondents contend their fiduciary duty runs not to individual subscribers, but to the exchange as a collective whole. . . . In *Lee v. Interinsurance Exchange*, and *Industrial Indem. Co. v. Golden State Co.*, the courts held that the

thus look to other areas of the law for guidance. There is some support for the proposition that Texas corporations law should guide this court in determining the legal duties of the board of a reciprocal insurance exchange. Texas courts and statutes have recognized that reciprocals and corporations share some basic common features. Texas courts have broadly analogized subscribers in a reciprocal insurance exchange to stockholders in a corporation in several cases. *See, e.g., Physicians, Surgeons and Hosps. Prof'l Servs., Inc. v. Texas*, No. 03-01-00373-CV, 2002 WL 1727396, at \*3 (Tex. App. July 26, 2002) ("In a reciprocal insurance exchange, the subscriber is not only a policyholder/insured, but is also an owner of the business, just as stockholders are owners of a corporation."); *Wilson v. Marshall*, 218 S.W.2d 345, 346 (Tex. Civ. App. 1949) ("The subscribers at a reciprocal exchange . . . own the insurance business just as stockholders own their corporation. . . . When called upon to pay an assessment for his pro rata part of the losses, the subscriber at the exchange stands in the position of a stockholder in a stock insurance company whose capital structure has become depleted and who is required to pay a certain

---

> attorneys-in-fact of a reciprocal exchange owe fiduciary duties to the subscribers analogous to the duties owed to shareholders by corporate management. Respondents' claim that the trustee of a trust owes a fiduciary duty to the trust itself but not to the beneficiaries is absurd. The business decisions made by the attorney-in-fact on behalf of the exchange are protected by the business judgment rule, but this does not absolve them of fiduciary responsibility to individual subscribers.

*Id.* The respondents in that case were attorneys in fact, not board members, and the quoted passage states only that an attorney in fact, not the board of directors, owes a fiduciary duty to individual subscribers. This is made even clearer when one considers the sentence that follows the first sentence of the quoted passage, and which True omitted with an ellipses: "Section 1305, however, clearly states that when the attorney-in-fact executes contracts, it is 'acting for [the] subscribers under powers of attorney.'"

amount on each share of stock he owns into the coffers of the company to remove the deficit.").

The chapter of the Texas Insurance Code addressing reciprocal insurance exchanges itself explicitly states that reciprocal insurance exchanges are subject to a number of the same statutory provisions that apply to corporations. The provisions of the Texas Business Corporation Act that relate to the indemnification of officers and directors apply to an exchange. Tex. Ins. Code Ann. § 942.003. Although reciprocal insurance exchanges are generally exempt from the operation of state insurance laws, subscribers to an exchange and their attorney in fact are still subject to a number of laws regarding the formation and structure of insurance companies. With the exception that references to "articles of incorporation" should instead be read to refer to "declaration of subscribers," and that the unencumbered surplus of an exchange should be considered "capital structure," the following statutory provisions, among others, apply with equal force to reciprocal insurance exchanges and insurance companies: (1) to form a company, each incorporator must adopt and sign the articles of incorporation of the company; (2) to obtain a charter for an insurance company, incorporators must file an application for charter, the proposed articles of incorporation, and an affidavit stating that the capital and surplus is the bona fide property of the company and that the information in the articles of incorporation is true; and (3) in considering an application, the insurance commissioner must assess whether the proposed capital structure of the company meets the requirements of the insurance code, whether the proposed officers, directors, attorney in fact, or managing head of the company have sufficient insurance experience, ability, standing, and good record to make success of the proposed company probable,

11

and whether the applicants are acting in good faith. *Id.* §§ 822.051, 822.057–822.060, 822.201, 942.003.

This court's precedent provides more direct support for drawing the corporate analogy. In one case, this court looked to Texas corporations law to fill in gaps in the statutory scheme for reciprocal insurance exchanges, resorting to the provisions of the Texas Business Corporation Act to determine whether the directors of a reciprocal insurance exchange are agents of the exchange, an issue not addressed in the Texas Insurance Code. *See Kiepfer*, 944 F.2d at 1217–18.

True concedes that it may be appropriate to draw analogies between members of a reciprocal insurance exchange and shareholders of corporations in certain contexts, but that such an analogy is inappropriate here on the grounds that: (1) USAA's members chose the reciprocal form specifically because one of the structural features of that form is direct accountability to the individual members; and (2) the board cannot owe a fiduciary duty to the membership as a whole because USAA is not a distinct legal entity. We do not believe that either of these objections is grounds for rejecting the corporate analogy in this suit.

Of course, a reciprocal insurance exchange is not a corporation. It would indeed be inappropriate to blindly apply corporations law to reciprocal insurance exchanges as if there were absolutely no legal difference between the two. However, in areas in which reciprocal insurance exchanges and corporations possess similar structural features and in which similar interests and policy concerns are implicated, corporations law may provide helpful guidance in determining the applicable rule under Texas law. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248–49 (5th Cir. 2008) (stating that a federal court may

12

consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns, when deciding a substantive issue under state law when that body of law provides no definitive answers to the question presented).

True correctly notes that reciprocal insurance exchanges and corporations are fundamentally different entities with respect to certain aspects of their basic organizational structures. A reciprocal insurance exchange in its pure form is essentially a web of contractual relationships between subscribers and their agent, *see* Reinmuth, *supra*, at 11, whereas a corporation is a distinct legal entity which comes into existence by a charter from the state and is separate from the individuals who own it, and whose existence and internal organization is not premised on contracts between its owners, *see* 15 Tex. Jur. 3d Corporations § 1. There is thus a certain amount of direct accountability inherent in the reciprocal form that is not present in the corporate form because of the direct individual duties created by the contracts that are the foundation of a reciprocal insurance exchange. Specifically, the attorney in fact that lies at the center of the reciprocal form owes fiduciary duties to each subscriber under the power of attorney agreements executed by each subscriber as a precondition of membership. *See Physicians, Surgeons and Hosps. Prof'l Servs., Inc.*, 2002 WL 1727396, at *3 (holding that a reciprocal insurance exchange and a subscriber "were in an existing fiduciary relationship of principal and agent because of the power of attorney granted by" the subscriber).

However, the fact that certain foundational relationships in a reciprocal insurance exchange are characterized by direct accountability to individual subscribers does not mean that direct accountability is inherent in all features

13

of any reciprocal insurance exchange. The direct accountability that characterizes the relationship between subscribers and the attorney in fact is rooted in the signed power of attorney executed by the former in favor of the latter, not in some vague understanding of the general purpose of reciprocal insurance exchanges and their organizational structure.

In this case, unlike the attorney in fact, the board of directors does not derive its authority from any power of attorney executed by subscribers. The subscriber agreement states that the attorney in fact's power to enter into indemnity agreements with other subscribers is to be exercised "only in accordance with the decisions of the Board of Directors," but the subscriber agreement itself does not grant any power directly to the board, and the fact that the board itself has the power to appoint the attorney in fact and limit his power makes clear that the board is not simply an agent of the attorney in fact. The board derives its power from the USAA bylaws, consented to by the subscribers in their subscriber agreements and through their decision to purchase policies with USAA. Although subscribers adopt the bylaws by signing the subscriber agreement, the subscriber agreement is not a contract between the subscriber and the board, but rather a delegation of power to the attorney in fact. Pursuant to the bylaws, subscribers have the power to elect board members, but subscribers and the board are not in contractual privity. The USAA board exists outside of the web of contractual relationships between subscribers and the attorney in fact, and thus does not fall within the web of direct accountability inherent in the pure reciprocal form.

To be sure, the organizational structure of USAA—essentially an elected board grafted onto the standard reciprocal form consisting of a web of

14

contractual relationships between subscribers and their agent—does not appear to be that of a typical reciprocal insurance exchange. It seems to be somewhat more common for a board of directors to serve as the attorney in fact, and to manage the assets of a reciprocal in that capacity. Reinmuth, *supra*, at 12–13 & n.8. In that scenario, the board would owe fiduciary duties to individual subscribers by virtue of the board's position as each individual subscriber's appointed attorney in fact. However, the mere fact that USAA possesses an atypical structure does not counsel in favor of glossing over its atypical features. If anything, the atypical nature of USAA calls for careful scrutiny of its unique organizational traits.

The role of USAA's board of directors and its relationship to subscribers is nearly identical to the role of a board of directors and its relationship to shareholders in a corporation. In both situations, the board derives its power from the organization's foundational documents rather than through contracts or powers of attorney executed by individual owners; is charged with managing the business affairs of the entity; and is accountable to the ownership as a whole through regular board elections. As one California decision cited by the parties and the district court has stated in explaining why the business judgment rule from the corporate context should apply to decisions made by the board of a reciprocal insurance exchange:

> If we look to the substance of the matter, it is clear that the relationship between the directors of a reciprocal insurer and its subscribers is identical in all significant ways to the relationship between the directors of any business organization and the organization's investors or other nonmanaging participants—*the directors are entrusted with the governance and management of the organization's affairs*. . . . Where the reason is the same, the rule should be the same.

15

*Lee*, 50 Cal. App. 4th at 713.

True argues that applying the rule from the corporate context that a board of directors does not owe a fiduciary duty to individual shareholders to the legal relationship between the board of USAA and its subscribers would result in the USAA board being completely unaccountable. True asserts that the board cannot owe a fiduciary duty to the membership as a whole because USAA is not a distinct legal entity.

At common law, unincorporated associations were indeed not considered to be separate legal entities, and had no existence apart from their individual members. *See Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 (Tex. 1992). They could only hold property through the intervention of trustees, and judgment could not be rendered against them, but rather only against their members. *Id.* at 169–70. These rules were viewed as applying to reciprocal insurance exchanges. *See* Reinmuth, *supra*, at 21 ("Since the exchange as an unincorporated association was not a legal entity under common law and thus could not be sued by name, any actions would have to be brought against the individual subscribers."); *id.* at 30 ("The traditional theory of a reciprocal asserts that since the exchange is a mere place, it cannot own assets as an entity. This concept is based on the supposition that in common law an unincorporated association is not recognized as a separate legal entity and is therefore incapable of holding legal title to assets.").

However, in Texas, these common law rules have been modified by statute. Under the chapter of the Texas civil statutes pertaining to unincorporated joint stock companies, an unincorporated joint stock company or association doing business in Texas may sue or be sued, and a judgment against it may be

satisfied from the individual property of its members, although a judgment creditor must first look to the joint property of the unincorporated entity. Tex. Rev. Civ. Stat. Ann. arts. 6133–38 (Vernon 1970). Rule 28 of the Texas Rules of Civil Procedure provides that "[a]ny . . . unincorporated association . . . may sue or be sued in its . . . common name for the purpose of enforcing for or against it a substantive right. . . ." Tex. R. Civ. P. 28. The Texas Supreme Court has stated that "[t]here can be no doubt that, at least to the extent of obtaining and enforcing judgments against them, rule 28 treats unincorporated associations as legal entities," although "[r]ule 28 generally does not affect substantive rights." *Cox*, 836 S.W.2d at 171 (citing Tex. R. Civ. P. 815); *see also Darrett v. Church of God In Christ No. 1*, 381 S.W.2d 720, 722 (Tex. Civ. App. 1964) (stating that rule 28 appears broad enough to give an unincorporated religious association a "procedural right to bring an action in its common name to enforce a substantive right"). Thus, an unincorporated business association does have a separate legal existence under Texas law, at least for procedural purposes, although the general common law rule that a judgment against an unincorporated association may be satisfied from individual members remains in effect.

The Texas reciprocal insurance exchange statute further modifies the common law rule concerning the legal status of reciprocal insurance exchanges, such that reciprocal insurance exchanges appear to exhibit more of the characteristics of a separate legal entity than unincorporated business associations generally. Not only may an exchange hold property, but the statute actually imposes financial requirements on exchanges relating to the maintenance of sufficient unencumbered surplus and reserves. *See* Tex. Ins.

17

Code Ann. § 942.155; *see also* Reinmuth*, supra*, at 106 (""[A]ll states specify that the surplus be contributed to and be in the name of the exchange as an entity."). Exchanges are regulated as distinct entities, subject to a number of the same insurance regulations as insurance companies generally. *See* Tex. Ins. Code Ann. § 942.003. An exchange does not come into existence merely through the agreement of private parties; a "declaration of subscribers" subject to the same requirements as the articles of incorporation for an insurance corporation must be filed with the state in order to form a reciprocal exchange. *Id*. §§ 822.051, 822.057–822.060, 942.003; *see also* Reinmuth, *supra*, at 83 ("[T]he reciprocal differs from a typical unincorporated association in that, similar to a corporation, it must be recognized and registered with the state before it can begin to operate and function."). Finally, if an exchange complies with the statutory financial requirements relating to the maintenance of sufficient unencumbered surplus, the individual liability of the subscribers may be limited to their annual premiums. Tex. Ins. Code Ann. § 942.152.

We believe that under this statutory regime, USAA must be viewed as a separate and distinct legal entity. It exists by virtue of a charter from the state; it is regulated as an entity by the Texas insurance authorities; it can (and is required to) hold property; it can sue, or be sued, as a legal entity; and any judgment against it is satisfied from the exchange's assets, with the liability of individual subscribers limited to their annual premiums.[2] A board of directors

---

[2] As an unincorporated association, a reciprocal insurance exchange is considered to have the citizenship of its members for diversity purposes in federal court. *See Country Rock Café, Inc. v. Truck Ins. Exch.*, 417 F. Supp. 2d 399, 403 (S.D.N.Y. 2006); *Norton v. Gurley*, No. CIV. A. 00-1704, 2000 WL 1408168, at *1 (E.D. La. Sept. 25, 2000) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–196 (1990); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir. 1993)); *Truck Ins. Exch. v. Dow Chem. Co.*, 331 F. Supp. 323, 324–25 (W.D.

can owe a legal duty to such an entity. This result is in accordance with the position taken by Professor Dennis F. Reinmuth, the author of the most comprehensive academic work on reciprocal insurance exchanges, who has stated that the view of the reciprocal as a legal non-entity "is not only unrealistic, but it is substantially incorrect," Reinmuth, *supra*, at 21, and that reciprocals should generally be viewed as separate legal entities:

> The traditional description of the reciprocal as a group of individuals or firms exchanging private insurance contracts with liability running between the individual members must be abandoned. The courts have allowed the exchange to be sued in its name and have permitted judgments to be levied against the exchange without specifying how such judgments are to be allocated among the subscribers. In so doing the courts have recognized that the exchange is an entity in fact apart from the subscribers, with assets in a "common fund" which can be applied to the satisfaction of liabilities. Moreover, the courts have recognized that the exchange as an "entity" can become insolvent.

*Id*. at 38. Professor Reinmuth has stated that "the exchange is now treated by law as a kind of quasi-corporation." *Id*. at 182.

The structural relationship between the board of USAA and its subscribers is nearly identical to the structural relationship between the board of a corporation and its shareholders, and similar interests and policy concerns are implicated in both relationships. We are not persuaded by True's argument that it is inappropriate to draw the corporate analogy in this case. The USAA board does not fall within the web of direct accountability inherent in the pure

---

Mo. 1971). However, this does not bear on whether a reciprocal insurance exchange is treated as a separate legal entity under state law. *See Lumbermen's Underwriting Alliance v. Mobil Oil Corp*., 612 F. Supp. 1166, 1169 (D. Idaho 1985) ("Even though state law might give an unincorporated association the capacity to sue or be sued as an entity, the citizenship of each of the members must still be considered for diversity purposes in federal court.").

reciprocal form, and USAA is in fact a separate and distinct legal entity under Texas law to which the board can owe a fiduciary duty. Accordingly, we hold that Texas corporations law provides the best guidance regarding whether the board of directors of USAA owes a fiduciary duty to individual subscribers under Texas law. *See Kiepfer*, 944 F.2d 1217–18 (looking to Texas corporations law to fill in gaps in the statutory scheme for reciprocal insurance exchanges). Applying that law in this case leads to the conclusion that the USAA directors have a fiduciary duty only to the exchange, which represents the interests of the subscribers as a whole, not to individual subscribers. *See Gearhart Indus., Inc.*, 741 F.2d at 721; *Somers*, --- S.W.3d ----, 2009 WL 793751, at *4; *Cotten*, 187 S.W.3d at 698; *Hoggett*, 971 S.W.2d at 488.

## IV.    Conclusion

We hold that there is no fiduciary or contractual relationship between individual subscribers and the USAA board of directors, and therefore that True has failed to state a claim for relief. The judgment of the district court is AFFIRMED.