**REVISED April 15, 2016**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10539

United States Court of Appeals
Fifth Circuit

**FILED**
March 7, 2016

Lyle W. Cayce
Clerk

ABRAHAM SHAKERI; KAHATEREH TAJI,

> Plaintiffs - Appellants

v.

ADT SECURITY SERVICES, INC., doing business as ADT,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:

Plaintiffs–Appellants Abraham Shakeri and Kahatereh Taji filed suit against Defendant–Appellee ADT Security Services, Inc. in state court, pursuing a breach of contract claim and tort claims under Texas law for negligence, fraud, unconscionable conduct, and breach of the implied warranty of good and workmanlike performance. ADT removed the case to federal court, thereafter moving to dismiss the tort claims and limit recovery on the breach of contract claim. The district court ultimately dismissed Plaintiffs' tort claims and limited their contractual recovery in three separate orders. Plaintiffs

No. 15-10539

timely appealed and argue that the district court erred in dismissing their tort claims. For the following reasons, we REVERSE the district court's order dismissing Plaintiffs' negligence claim and REMAND to the district court for further proceedings on this claim, and we AFFIRM the district court's orders dismissing Plaintiffs' remaining tort claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs–Appellants Abraham Shakeri and Kahatereh Taji were proprietors of a jewelry store, Neimax Jewelry Shop, in Irving, Texas, that they opened in 1987. After the store opened, Shakeri executed a contract on June 16, 1988 (1988 Contract), with Defendant–Appellee ADT Security Services, Inc. (ADT), whereby ADT would provide Neimax Jewelry with an alarm system and backup alarm while also servicing the alarm systems. Included in the 1988 Contract were a number of terms and conditions to govern the parties' relationship. Shortly thereafter, in November 1988, Shakeri and Taji formed the company Neimax Jewelry, Inc. (Neimax). On August 26, 1999, Shakeri, acting as President of Neimax, executed a second contract with ADT (1999 Contract) under which ADT updated and replaced some of the alarm system's existing components. The 1999 Contract included many of the same terms and conditions as the 1988 Contract, some of which are now relevant to the appeal before us. As to maintenance, the 1999 Contract stated:

> C. Maintenance — If the reverse side of this agreement indicates this service is being provided, ADT will, upon Customer's request, provide ordinary maintenance and repair of such system due to normal wear and tear and bear the expense thereof. . . .

As to liability, the 1999 Contract limited Neimax's recoverable damages in the event that ADT failed to perform its obligations under the Contract:

> E. . . . IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE, OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL

2

No. 15-10539

SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES.

And the 1999 Contract also included a merger clause acknowledging that Neimax was not relying on any representation, inducement, or advertisement in entering the contract:

N. THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE CUSTOMER AND ADT. IN EXECUTING THIS AGREEMENT, CUSTOMER IS NOT RELYING ON ANY ADVICE OR ADVERTISEMENT OF ADT. CUSTOMER AGREES THAT ANY REPRESENTATION, PROMISE, CONDITION, INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED, NOT INCLUDED IN WRITING IN THIS AGREEMENT SHALL NOT BE BINDING UPON ANY PARTY, AND THAT THE TERMS AND CONDITIONS HEREOF APPLY AS PRINTED WITHOUT ANY ALTERATION OR QUALIFICATION, EXCEPT AS SPECIFICALLY MODIFIED IN WRITING. THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL GOVERN NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS AND CONDITIONS OR ANY PURCHASE ORDER OR OTHER DOCUMENT SUBMITTED BY THE CUSTOMER.

After Neimax entered into the 1999 Contract, Neimax continued to use ADT as its alarm system provider, paying ADT for the alarm system's installation and for monthly alarm system service. The ADT alarm system included a panic button (or silent alarm system) whereby the alarm would be triggered by pushing a button.

3

No. 15-10539

On January 5, 2012, Shakeri contacted ADT to request servicing of the Neimax alarm system and the backup alarm. ADT dispatched a technician to Neimax on January 10, 2012, who ostensibly performed the service and informed Shakeri that the service was complete. However, after the technician's visit, Shakeri noticed a new beeping sound coming from the alarm. Shakeri subsequently called ADT to report the problem on January 11, but a repair technician never repaired the alarm system. According to ADT, the repair technician arrived in Neimax's parking lot at 5:00 PM that day but did not enter the store because no overtime was authorized for his work.

On January 12, 2012, Neimax was robbed at gunpoint, and Shakeri was severely beaten and tasered. During the robbery, Shakeri pushed the button to trigger the alarm system multiple times, but the alarm system and the backup alarm failed to work. Shortly after the robbery occurred on January 12, an ADT technician arrived at Neimax to fix the alarm system, by which point Shakeri was being taken to the hospital. As a result of the robbery, Shakeri suffered injuries to his neck, body, and right shoulder that required surgery. ADT alleges that, by the time of the robbery, its technician had informed Shakeri that the alarm system was broken and that no monitoring was taking place.

Shakeri and Taji filed the instant civil action against ADT in the 14th Judicial District Court of Dallas County, Texas, on June 11, 2013, seeking monetary relief over $200,000 but not more than $1,000,000. Plaintiffs asserted claims for negligence, breach of contract, common law fraud, and unconscionable conduct under the Texas Deceptive Trade Practices Act (DTPA). On their breach of contract claim, Plaintiffs alleged that ADT had breached the contract by not providing a working alarm system and repairing it in a timely manner. Plaintiffs also alleged that Defendants committed fraud by misrepresenting that the alarm would be a top of the line alarm system and

4

that Plaintiffs had relied on this misrepresentation when entering into the 1999 Contract. As to their negligence claim, Plaintiffs alleged that ADT owed a legal duty to provide a top of the line commercial alarm for Plaintiffs and breached that duty by failing to provide a working alarm and making the necessary repairs. Finally, Plaintiffs' DTPA claim alleged that ADT had engaged in unconscionable conduct when it falsely advertised that its alarm system would not fail and would be of high quality, thereby exploiting Plaintiffs' lack of knowledge, ability, experience, or capacity.

ADT removed the action to federal court under 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332. Following removal, ADT moved to dismiss Plaintiffs' negligence, fraud, and DTPA claims. ADT also sought to limit any breach of contract damages to a maximum of $1,000, pursuant to Section E of the 1999 Contract. The district court granted the motion in part and denied the motion in part on December 11, 2013. The district court dismissed the negligence claim, relying on a decision of a Texas intermediate appellate court to find that ADT had no common law duty under Texas law to provide Plaintiffs with an operating top of the line commercial alarm. The court added that such an obligation also would have arisen contractually, thus barring Plaintiffs' claim under Texas's economic loss rule. The court dismissed Plaintiffs' common law fraud and DTPA fraud claims for failing to meet the heightened pleading standards of Fed. R. Civ. P. 9(b). However, the court declined to dismiss Plaintiffs' claim that ADT had engaged in unconscionable conduct in violation of the DTPA and declined to limit Plaintiffs' contract damages to $1,000 at the motion to dismiss stage. Plaintiffs were then granted an opportunity to replead their claims in order to satisfy heightened federal pleading standards. Shakeri thereafter filed a motion to file a first amended complaint.

No. 15-10539

On February 5, 2014, Neimax filed a motion to intervene as a party–plaintiff under Fed. R. Civ. P. 24, and, along with Shakeri, filed a motion to file another amended complaint. The court granted both motions on April 29, 2014. Shakeri, Taji, and Neimax then filed a third amended complaint on April 30, 2014, re-asserting their breach of contract, DTPA unconscionable conduct, and fraud claims under Texas law. In addition, Plaintiffs asserted common law and DTPA claims for breach of the implied warranty of good and workmanlike performance on the basis that ADT's technician failed to repair or modify the commercial alarm during his service visit.[1] ADT again moved to limit Plaintiffs' breach of contract damages to $1,000 and moved to dismiss Plaintiffs' fraud, DTPA unconscionable conduct, and DTPA implied warranty claims under Fed. R. Civ. P. 9(b) and 12(b)(6).

On November 6, 2014, the court granted ADT's motion to limit Plaintiffs' breach of contract damages and dismissed Plaintiffs' unconscionable conduct, fraud, and DTPA implied warranty claims under Fed. R. Civ. P. 12(b)(6). The court found that Plaintiffs did not state a claim for unconscionable conduct under the DTPA because their claim was essentially an allegation that ADT failed to fulfill its contractual obligations. As to Plaintiffs' fraudulent inducement claim, the court found that it was foreclosed by the merger clause in the 1999 Contract where Plaintiffs explicitly disclaimed reliance on any advice or advertisement by ADT. The court also dismissed Plaintiffs' DTPA implied warranty claim on the basis that Plaintiffs had not pleaded sufficient facts to make out such a claim. The court raised *sua sponte* whether ADT was entitled to dismissal of Plaintiffs' common law implied warranty claim, giving Plaintiffs twenty-one days to brief why that claim should not be dismissed as well. Plaintiffs failed to brief the issue, leading the district court to dismiss

---

[1] Plaintiffs did not replead their negligence claim in their third amended complaint.

the common law implied warranty claim on December 3, 2014. In order to perfect their appeal as to their dismissed claims, Plaintiffs moved for an agreed judgment against ADT in the amount of $1,000 on their remaining breach of contract claim, and the district court granted the motion on May 12, 2015. Plaintiffs timely appealed the district court's judgment on June 5, 2015.

## II. STANDARD OF REVIEW

"We review 'de novo a district court's grant or denial of Rule 12(b)(6) motion to dismiss, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.'" *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir. 2015) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Under this standard "[d]ismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *True*, 571 F.3d at 417 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Similarly, when we review "a district court's determination of state law," while sitting in diversity jurisdiction, our review is de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). In resolving issues of state law, "we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cty.*, 212 F.3d 269, 271–72 (5th Cir. 2000). But "[i]f no final disposition is directly on point, we must make an '*Erie*-guess', predicting how that court would rule." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (quoting *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998)); *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

In making an *Erie* guess "as to how the Texas Supreme Court would rule," this court looks to:

> (1) decisions of the [Texas] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Texas] Supreme Court

No. 15-10539

decisions on related issues, (3) dicta by the [Texas] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Texas] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010) (alterations in original) (quoting *Hodges*, 474 F.3d at 199).

## III. PLAINTIFFS' TORT CLAIMS

Plaintiffs Shakeri and Taji argue on appeal that the district court erred in dismissing their claims for common law negligence, breach of the implied warranty of good and workmanlike performance under the common law and the DTPA, unconscionable conduct under the DTPA, and common law fraudulent inducement. Before proceeding to our review of Plaintiffs' claims, we address a prefatory issue that may affect our analysis. Recognizing that the terms of Neimax's 1999 Contract with ADT might preclude their various tort claims, Shakeri and Taji assert that they are not parties to the 1999 Contract or the 1988 Contract and that only Neimax is a party to these contracts. Because Shakeri signed the contracts in his representative capacity as president or officer of Neimax, but not in his individual capacity, Shakeri and Taji argue that the 1999 Contract has no effect on their claims. We find Plaintiffs' arguments unpersuasive. Under Texas law, "a litigant who sues based on contract subjects him or herself to the contract's terms." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001). While Plaintiffs Shakeri and Taji claim that they are not bound by the 1999 Contract, their original and amended complaints asserted breach of contract claims, even before Neimax intervened as a party to the suit. Plaintiffs are therefore bound by the terms of the 1999 Contract. With this in mind, we address each of Plaintiffs' tort claims in turn.

8

## A. Plaintiffs' Negligence Claim

Although Plaintiffs argue that their negligence claim was improperly dismissed, ADT asserts that Plaintiffs abandoned their negligence claim after the district court dismissed the claim in its December 11, 2013 order. According to ADT, because the district court granted Plaintiffs leave to replead the claims dismissed in that order and because Plaintiffs failed to replead the negligence claim, this claim is now abandoned on appeal. ADT is correct that a failure to replead claims after being granted leave to replead constitutes waiver of any such claims on appeal. *See Gonzalez v. Aztex Advantage*, 547 F. App'x 424, 428 n.8 (5th Cir. 2013) (per curiam) (unpublished) (noting that failure to file a claim in the amended complaint renders it waived on appeal); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect. . . ."). However, Plaintiffs did not waive their negligence claim by failing to replead it.

The district court did not specify whether it was dismissing claims with or without prejudice in its December 11, 2013 order. Nonetheless, a closer examination of the district court's order shows that it dismissed Plaintiffs' negligence claim under Rule 12(b)(6) and fraud claims under Rule 9(b) for failure to plead the "claims with the required degree of specificity." While the district court order granted Plaintiffs leave to replead, it is clear that it did so as to Plaintiffs' fraud claims in order to give Plaintiffs "an opportunity to replead under the federal pleading standards." By contrast, the district court appears to have dismissed Plaintiffs' negligence claim with prejudice when it held that the claim was unavailable under Texas law. And we have noted that, "[u]nless the court in its order for dismissal otherwise specifies," a Rule 12(b) dismissal "operates as an adjudication on the merits." *Hall v. Tower Land & Inv. Co.*, 512 F.2d 481, 483 (5th Cir. 1975) (quoting Fed. R. Civ. P. 41(b)).

Reading the district court's order as a whole, we conclude that Plaintiffs did not abandon their negligence claim by failing to replead it because Plaintiffs could not have repleaded the claim. *See Memon v. Allied Domecq QSR,* 385 F.3d 871, 874 n.6 (5th Cir. 2004) (determining that a district court's dismissal order was with prejudice although the order did not specify whether it was with or without prejudice).

Turning to Plaintiffs' negligence claim on the merits, we find that the district court erred in dismissing the claim. Under Texas law, "[t]o sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). Nonetheless, "[a] party's conduct may often ostensibly implicate both contractual obligations and various tort duties." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008). Recognizing this, Texas courts follow "[t]he economic loss rule [which] generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) [hereinafter *Chapman (Tex.)*] (per curiam). Under this doctrine, "if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

However, the doctrine "does not bar all tort claims arising out of a contractual setting." *Chapman (Tex.)*, 445 S.W.3d at 718. The Supreme Court of Texas has held that "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* In this analysis,

"[t]he nature of the injury most often determines which duty or duties are breached." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). If the injury "would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort." *Sw. Bell Tel.*, 809 S.W.2d at 494. Following this principle, Texas courts have held that "[t]he [economic loss] rule does not preclude tort recovery if [the injury involves] physical harm to the ultimate user or consumer or other property." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007); *see also* Restatement (Third) of Torts: Liab. for Econ. Harm § 3 cmt. b (Am. Law Inst. 2012) ("An actor whose negligence causes personal injury or physical harm to the property of another can be held liable in tort regardless of whether the negligence occurs in the performance of a contract between the parties.").

In dismissing Plaintiffs' negligence claim, the district court committed two errors. First, it relied on *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 446 S.W.3d 29 (Tex. App.—Dallas 2013, pet. granted) [hereinafter *Chapman (Dall.)*] (mem. op.), to conclude that plaintiffs had not specifically pleaded a common law duty under Texas law to provide an operating top of the line commercial alarm. Second, it concluded that even "if ADT has such an obligation, it arose by contract," so the claim would be subject to the economic loss rule. On the first point, *Chapman (Dall.)* has since been overruled, and the rationale from *Chapman (Dall.)* specifically relied on by the district court has been overruled. In *Chapman*, a homeowner filed a negligence claim against a plumber "for water damage to new construction allegedly caused by a plumber's negligent performance under its subcontract with the homeowner's general contractor." *Chapman (Tex.)*, 445 S.W.3d at 717. Because the intermediate appellate court was under the impression that the pleadings alleged no "violation of any duties imposed by law that were independent of the contract," it granted summary judgment on the negligence

claim. *Chapman (Dall.)*, 446 S.W.3d at 35.  On review, the Supreme Court of Texas reiterated the economic loss rule but found that "the plumber assumed an *implied duty* not to flood or otherwise damage the trust's house while performing its contract with the builder." *Chapman (Tex.)*, 445 S.W.3d at 718 (emphasis added).  And this implied duty was "independent of any obligation undertaken in its plumbing subcontract with the builder, and the damages allegedly caused by the breach of that duty extend beyond the economic loss of any anticipated benefit under the plumbing contract." *Id.* at 719.  *Chapman (Tex.)* demonstrates that Plaintiffs should not be faulted for failing to specifically demonstrate that a common law duty to provide an operating top of the line commercial alarm exists in Texas because such duties may be implied by the relationship between the parties.

On the second point, the district court erred when it suggested that, in any event, Plaintiffs' negligence claim would be covered by the 1999 Contract. A reading of the 1999 Contract shows that ADT was bound by Section C of the contract to provide maintenance and repair of the alarm system.  At first glance, this suggests that the economic loss rule should preclude Plaintiffs' negligence claim.  Plaintiffs alleged that ADT breached its duty to provide them with a top of the line alarm and to provide a working alarm system, a duty that appears to be covered by contract.  However, under Texas law, "[t]he nature of the injury most often determines which duty or duties are breached." *Jim Walter Homes*, 711 S.W.2d at 618.  While Plaintiffs assert a duty that sounds similar to the one covered by contract, the nature of Plaintiffs' injury is non-economic.  Plaintiff Shakeri alleged that he suffered severe and permanent physical injuries when Neimax was robbed on January 12, 2012.  Plaintiff Shakeri's injury is therefore the kind of "physical harm" that is not covered by the economic loss rule and is not defeated by the existence of a contract

between the parties. *Equistar Chems.*, 240 S.W.3d at 867. Accordingly, the district court erred in dismissing Plaintiffs' negligence claim.

**B. Plaintiffs' Common Law and DTPA Claims for Breach of the Implied Warranty of Good and Workmanlike Performance**

While the district court erred in dismissing Plaintiffs' negligence claim, it did not err in dismissing Plaintiffs' claims for breach of the implied warranty of good and workmanlike performance at common law and under the DTPA. The district court held that Plaintiffs had not specifically pleaded facts to "enable the court to draw the reasonable inference that the ADT repair technician did not perform the alarm repairs in a manner generally considered proficient by those capable of judging such work." Plaintiffs likely pleaded enough facts to make out a breach of the implied warranty claim;[2] however, we nevertheless affirm the district court's dismissal because Plaintiffs' claims still fail under Texas law. *See Gilbert v. Donahue*, 751 F.3d 303, 311 (5th Cir. 2014) ("Under our precedent, we may 'affirm on any ground supported by the record, including one not reached by the district court.'" (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)).

Under Texas law, "[t]he DTPA prohibits the breach of an express or implied warranty . . . but it does not create warranties." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995). "The warranties, both express and implied, actionable under the DTPA must be recognized by the common law or

---

[2] Texas law "define[s] good and workmanlike as that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). Plaintiffs pleaded that ADT's technician failed to properly repair the alarm system and left it in a condition where it did not work, despite being called to repair the alarm system and telling Shakeri that the alarm was in working order. Based on this allegation, it is clear that Plaintiffs "plead[ed] factual content that allow[ed] the court to draw the reasonable inference that the defendant [could be] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

created by statute." *Id.* And an "implied service warranty," like the implied warranty of good and workmanlike performance, is "a common law creation." *Id.*; *see also Melody Home Mfg.*, 741 S.W.2d at 354 (recognizing the implied warranty of good and workmanlike performance of services under common law).[3] The Supreme Court of Texas has, at times, "recognized an implied warranty for services only when the services relate to the repair or modification of existing tangible goods or property." *Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 52–53 (Tex. 1998). However, implied warranties that "services will be performed in a good and workmanlike manner" will generally only "arise under the common law when public policy mandates." *Id.* at 53. The Supreme Court of Texas has clarified that "[p]ublic policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need" and "[t]here is no compelling need for an implied warranty when other adequate remedies are available to the consumer." *Id.*

We are not aware of, and Plaintiffs do not point to, any case recognizing an implied warranty in circumstances analogous to the instant case. Moreover, a Texas court would not recognize an implied warranty here. Although Plaintiffs plead an implied warranty in the repair and modification of their alarm system, Plaintiffs' claim essentially rests on ADT's failure to perform "services . . . in a good and workmanlike manner." *Id.* An implied warranty in ADT's service of the alarm system therefore would only exist if public policy justified imposing one based on a compelling need. Because Plaintiffs have adequate remedies for ADT's conduct in both their negligence and breach of contract causes of action, Texas courts would not recognize an

---

[3] Because Plaintiffs' DTPA and common law implied warranty claims both rely on the existence of an implied warranty created at common law, we treat them similarly in our analysis of whether Texas courts would recognize an implied warranty here.

implied warranty in ADT's repair and modification of the alarm system. Plaintiffs fail to state adequate claims for breach of the implied warranty of good and workmanlike performance under Texas law.

### C. Plaintiffs' DTPA Unconscionable Conduct Claim

The district court also did not err in dismissing Plaintiffs' DTPA unconscionable conduct claim because this claim amounted to an allegation that ADT breached the contract. The DTPA makes actionable "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," including unconscionable conduct. Tex. Bus. & Com. Code Ann. § 17.46(a). Unconscionable conduct exists where "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5). However, "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983). Instead, as with the economic loss rule, the inquiry is whether the alleged unconscionable conduct "could have resulted in the absence of a contract between the parties." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996) (per curiam). Interpreting Texas law, we have stated that where "allegedly unconscionable statements" are made but where the breach of the contract causes the harm, a plaintiff cannot maintain a claim for unconscionable conduct under the DTPA. *Malsom v. Match.com, L.L.C.*, 540 F. App'x 412, 415 (5th Cir. 2013) (unpublished).

Plaintiffs argue that their unconscionable conduct claim is not simply a claim of "failure to perform the contract" and that there was unconscionable conduct notwithstanding the contract. Nonetheless, their claim ultimately rests on the allegation that ADT falsely advertised that its alarm system would be of high quality and would work, when the alarm system, in fact, did not

work as it was supposed to under the contract. Plaintiffs' claim resembles that of the plaintiffs in *Malsom*. We held that the *Malsom* plaintiffs had not stated an unconscionable conduct claim because "[t]heir allegations [we]re essentially . . . that (1) [Defendant] represented that it would perform under the contract, and (2) nonperformance mean[t] that [Defendant] misrepresented that [it] would perform under the contract." *Id.* at 416. Like the *Malsom* plaintiffs' claim, the claim for unconscionable conduct before us "amounts to a breach of contract claim." *Id.* Thus, the district court did not err in dismissing Plaintiffs' unconscionable conduct claim.[4]

### D. Plaintiffs' Fraudulent Inducement Claim

Finally, the district court did not err in dismissing Plaintiffs' fraudulent inducement claim. The district court concluded that this claim was barred because of a merger clause in Section N of the 1999 Contract, which stated that "in executing th[e] agreement, [the] customer [was] not relying on any advice or advertisement of ADT." Although, Texas law generally permits actions for common law fraud,[5] "it may be possible for a contract's terms to preclude a claim for fraudulent inducement by a clear and specific disclaimer-of-reliance clause." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341

---

[4] We note that an unconscionable conduct claim may also exist "when the plaintiff alleges not only a breach of contract, but also that the other party 'never intended' to fulfill the contract in the first place." *Malsom*, 540 F. App'x at 415 (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006)). However, Plaintiffs did not allege that ADT never intended to fulfill the contract in their pleadings.

[5] Under Texas law, a plaintiff can demonstrate common law fraud where:

(1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury.

*Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990).

S.W.3d 323, 332 (Tex. 2011). "[A] disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim," but "a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *cf. Italian Cowboy Partners*, 332 S.W.3d at 334 (distinguishing pure merger clauses from those with "an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement"). We find that Section N of the 1999 Contract was sufficiently clear as to disclaim any reliance by Plaintiffs on any alleged misrepresentation ADT made prior to Plaintiffs entering into the contract. Accordingly, Plaintiffs' fraudulent inducement claim is barred under Texas law.

## IV. CONCLUSION

We hold that the district court erred in dismissing Plaintiffs' negligence claim but correctly dismissed Plaintiffs' other tort claims. Therefore, we REVERSE the district court's order dismissing Plaintiffs' negligence claim and REMAND to the district court for further proceedings on this claim, but we AFFIRM the district court's orders dismissing Plaintiffs' remaining tort claims. Each party shall bear its own costs.