**Brian FORRETT, Plaintiff–Appellant,**

v.

**Linford RICHARDSON, Terry Frizell; Ronald O. Loveridge; Jack Clarke; Defendants–Appellees.**

No. 95–56162.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1997.

Decided April 28, 1997.

Stephen Yagman, Yagman & Yagman, Venice, CA, and the Law Offices of Paul Hoffman (on the brief), Santa Monica, CA, for plaintiff-appellant.

George J. Franscell and Priscilla F. Slocum (on the brief), Franscell, Strickland, Roberts & Lawrence, Pasadena, CA, for defendants-appellees.

Before: BEEZER and KOZINSKI, Circuit Judges, and SHUBB,* District Judge.

SHUBB, District Judge.

We consider whether the district court properly set aside the jury's verdicts in favor of Brian Forrett on his 42 U.S.C. § 1983 claims. Forrett claimed that the defendant police officers used excessive force when they shot him as he tried to elude capture. He also alleged that then-police chief Linford Richardson ratified, and the City of Riverside had a policy of permitting, this use of deadly force. Following a trifurcated trial and verdicts in plaintiff's favor, however, the district court granted the defendants' motions for judgment as a matter of law and new trial in the event the judgment is reversed on appeal.

Forrett appeals from the judgment in favor of all defendants.

## FACTUAL BACKGROUND

Forrett committed a violent residential burglary at approximately 12:00 p.m. on November 29, 1990. While in the residence, he encountered, subdued, and tied up three victims. He shot one of the victims in the neck at point blank range and shot at another using a .38 caliber revolver he found in the house. He then fled the scene in a truck owned by one of the residents, taking with him several firearms and 250 rounds of ammunition.

After Forrett left the house, one of the victims managed to untie himself and telephone the City of Riverside Police Department. The victim described Forrett's appearance, the crimes, the truck, and the weapons to the officers who arrived at the house a few minutes later. These details were promptly conveyed by radio to numerous officers, including the defendants. The officers began a search for Forrett, and found the truck within an hour. Neither Forrett nor the weapons were inside.

A few minutes later, defendant Officer Kenneth Raya saw Forrett walking in a nearby residential neighborhood. Because Forrett matched the description of the burglar, Raya confronted Forrett. Forrett fled into the residential area on foot. Raya radioed for help and briefly chased Forrett. He stopped when Forrett ran out of view behind a house because he was worried that Forrett was armed and might ambush him. Raya waited for support, and when the other defendant officers, Elliott, Seymore and Manning, arrived moments later, they renewed the chase.

Other officers meanwhile set up a perimeter around the neighborhood and began combing the area on foot. The police also used a helicopter to warn residents and the inhabitants of a nearby elementary school that they should remain indoors. The police took this precaution because they were concerned that Forrett would flee into a house or the school and take hostages.

Forrett eluded capture for almost an hour by running across yards and streets, and jumping fences. He hid in a wooden shed for a few minutes, where he removed a layer of clothing in an attempt to change his appearance. The four defendant officers eventually chased him into a yard bounded on at least one side by a six-feet high wooden fence. Forrett paused in the yard to look around. The officers approached to within 20–30 feet and shouted at Forrett to stop and surrender. At trial, Forrett testified that at this point he was aware that the police were after him, that he was trying to get away, and that he heard the officers shouting, though he could not discern what they were saying.

As Forrett hesitated, Officers Raya and Elliott fired seven or eight shots at him but did not hit him. Ignoring the shots, Forrett ran to the fence and began climbing over into the next yard. Officers Seymore, Elliott, and Manning fired several more shots as he scaled the fence. These rounds all missed Forrett, and he fell unwounded into the adjacent yard. The officers then fired through

---

* The Honorable William B. Shubb, Chief United States District Judge for the Eastern District of California, sitting by designation.

the fence. Two bullets hit Forrett as he got up to run away, one in the hip and the other in the back. Unable to run, Forrett was quickly apprehended by another officer who had come around to the other side of the fence. The officers expended approximately 24 rounds in stopping Forrett.

The police found no guns, either on Forrett or in the vicinity where he was captured. Forrett eventually pled guilty to several felony counts related to the burglary and assaults.

The City of Riverside Police Department Shooting Board reviewed the circumstances of the arrest and concluded that the officers had complied with the department's policy on the use of deadly force. The Board is an internal affairs committee that investigates shooting incidents and makes recommendations to the police chief. The Board recommended that the officers not be censured. Then-police chief Richardson adopted the recommendation and did not reprimand the officers.

Forrett subsequently brought this section 1983 action, alleging that the officers used excessive force, that Richardson ratified their conduct by failing to investigate the matter adequately or reprimand them, and that Richardson acted pursuant to a City policy permitting the use of excessive force. In the first phase of trial, the jury determined the individual officers' liability, the amount of compensatory damages, and whether plaintiff was entitled to punitive damages. In the second phase, the jury determined the amount of punitive damages. In the third phase, the jury resolved the City's liability.

At the close of all of the evidence, defendants moved for judgment as a matter of law on the grounds that they did not violate Forrett's Fourth Amendment rights and were entitled to qualified immunity. The district court denied the motion. The jury ultimately found for Forrett and awarded him nominal damages against each defendant and punitive damages against each defendant except the City.

After trial, the defendants renewed their motion for judgment under Rule 50(b). The district court granted the motion, finding as a matter of law that the officers used objectively reasonable force, the City and Richardson were not liable because there was no underlying constitutional violation, and Richardson was entitled to qualified immunity in any event.

**DISCUSSION**

We review the district court's decision to grant judgment as a matter of law de novo. *Montiel v. City of Los Angeles,* 2 F.3d 335, 342 (9th Cir.1993). We use the same standard as the district court to determine if judgment as a matter of law was appropriate under Fed.R.Civ.P. 50(a). *The Jeanery, Inc. v. James Jeans, Inc.,* 849 F.2d 1148, 1151 (9th Cir.1988).

Rule 50(a)(1) provides that

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim....

Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. *Bank of the West v. Valley Nat'l Bank of Ariz.,* 41 F.3d 471, 477 (9th Cir.1994).

**A. Excessive Force**

Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir.1994). To prevent the escape of a felony suspect, a police officer may use *deadly force* only when it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a threat of serious harm, either to the officer or others. *Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985).

We first address what it means for a felony suspect to pose a threat of serious harm. Contrary to Forrett's position, the suspect need not be armed or pose an immediate threat to the officers or others at the time of the shooting. The Supreme Court in *Garner* identified specific situations in which a fleeing felony suspect may be deemed to pose a threat of serious harm to the officer or others:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon *or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm,* deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12, 105 S.Ct. at 1701 (emphasis added.) Under this test, it is not necessary that the suspect be armed or threaten the officer with a weapon. Whenever there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, if some warning has been given, where feasible. *Id.*

Forrett conceded that the officers had probable cause to believe he had committed a crime involving the infliction of serious harm. The defendants therefore had probable cause to believe that Forrett posed a serious threat of harm to them or others. *See id.* Forrett also testified that he was consciously attempting to evade arrest at the time, and that he knew the police were chasing him and yelling at him, though he could not hear their words. This testimony established that Forrett was trying to escape and that the defendants warned him before using deadly force. *See id.*

The only remaining issue under *Garner*, then, is whether the use of deadly force was necessary to prevent Forrett from escaping. *Id.* The necessity inquiry is a factual one "Did a reasonable non-deadly alternative exist for apprehending the suspect?" *Brower v. County of Inyo,* 884 F.2d 1316, 1318 (9th Cir.1989).

Forrett contends that a less drastic alternative would have been to wait and capture him later by less deadly means. He theorizes that his capture was inevitable because the police had cordoned off the neighborhood and surrounded him with officers on foot and in a helicopter. He also argues that the defendants knew that one of their colleagues was stationed on the other side of the fence and that Forrett's capture was therefore imminent regardless of whether they shot him.

We do not find the evidence necessary to support this theory in the record. The defendants' decision to use deadly force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (citation omitted). Nothing in the record indicates that at the time of the shooting the defendants knew that their colleague was on the other side of the fence, or that other officers had established a closed perimeter. Nor does the evidence show that the police had actually established an *escape-proof* cordon at the time Forrett was shot.

Even if Forrett's capture was inevitable, it does not follow on these facts that the use of deadly force was unnecessary. The Fourth Amendment does not require law enforcement officers to exhaust every alternative before using justifiable deadly force. *See Plakas v. Drinski,* 19 F.3d 1143, 1148 (7th Cir.1994). The alternative must be reasonably likely to lead to apprehension before the suspect can cause further harm. It is not, as Forrett would have it, any alternative that might lead to apprehension in the future. The option must be reasonable in light of the community's strong interests in security and preventing further harm. *See Kinney v. Indiana Youth Ctr.,* 950 F.2d 462, 465 (7th Cir.1991) (noting public interest in preventing dangerous individuals from escaping into the community).

The timing of a suspect's capture, and the opportunities for violence the suspect may have before capture, are therefore cru-

cial to the reasonable necessity inquiry. *See e.g.,* Model Penal Code § 3.07(2)(b) ("[t]he use of deadly force [to capture a felony suspect] is not justifiable ... unless ... the actor believes that ... there is a substantial risk that the person to be arrested will cause death or serious bodily harm *if his apprehension is delayed"*) (emphasis added) (cited with approval in *Garner,* 471 U.S. at 6 n. 7, 105 S.Ct. at 1699 n. 7).

It is undisputed that Forrett used every desperate means at his disposal to elude capture for almost an hour of hot pursuit. He vaulted fences, hid in a shed, and removed easily identifiable clothing. He ignored the defendants' repeated shouts. He ran to the fence while the defendants fired more than eight shots at him. Despite the volley of bullets, he did not surrender and instead began climbing the fence. The defendants fired several more shots at him, and still he kept fleeing. The only objectively reasonable conclusion to be drawn from this evidence is that if the defendants had not shot him, he would have continued taking whatever measures were necessary to avoid capture.

The defendants therefore had probable cause to believe that Forrett was willing to use violent means to achieve his ends. *See Menuel v. City of Atlanta,* 25 F.3d 990, 995 (11th Cir.1994) (from the vantage of an officer confronting a dangerous suspect, "a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death"). The defendants knew that he was fleeing through a residential area where many of the neighborhood's residents and schoolchildren were in the vicinity. They also had probable cause to believe that he had recently invaded a home, tied up its occupants, shot one of them, and fled the scene by taking one occupant's truck, guns and ammunition. Adding these facts to his demonstrated willingness to take desperate measures, the defendants rightly concluded that it was highly possible that he would seize an opportunity to take an innocent bystander hostage. *See Kinney,* 950 F.2d at 465–66 (use of deadly force against escaping prisoners necessary to prevent opportunity

to take hostages). The use of deadly force was objectively reasonable under these circumstances.

For the foregoing reasons, the only reasonable conclusion that could be drawn from the evidence when construed in the light most favorable to plaintiff was that the officers did not violate plaintiff's Fourth Amendment rights. The District Court therefore properly granted judgment as a matter of law.

**B. Supervisory and Monell Liability**

The district court concluded that former police chief Richardson and the City were not liable because their liability was predicated upon the officers' violation of Forrett's constitutional rights. Forrett does not dispute that their liability hinges upon the officers' conduct. Because we conclude that the officers did not violate Forrett's constitutional rights, neither Richardson nor the City can be liable under section 1983. *See Quintanilla v. City of Downey,* 84 F.3d 353, 355 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 972, 136 L.Ed.2d 856 (1997) (no *Monell* liability when the individual officer inflicted no constitutional harm). The judgment in favor of Richardson and the City must therefore be affirmed.

**C. Attorneys' Fees and Costs on Appeal**

Forrett requests attorneys' fees on appeal. Because he is not a prevailing party on appeal, he is not entitled to fees. *McGinnis v. Kentucky Fried Chicken of California,* 51 F.3d 805, 810 (9th Cir.1994). The appellees did not request fees in their opening brief pursuant to Circuit Rule 39–1.6. They are therefore not entitled to an award of fees on appeal, even though they are the prevailing parties. *Id.* The parties shall bear their own costs.

AFFIRMED.