**Miguel ROSALES, Plaintiff,**

v.

**CITY OF PHOENIX, a municipal corporation; Rick Salgado and Mrs. Rick Salgado, husband and wife; and Jose Leon Lopez and Mrs. Jose Leon Lopez, husband and wife, Defendants.**

**No. CV951225PHXSMMDAE.**

United States District Court,
D. Arizona.

Sept. 9, 1999.

Katherine F McLeod, Daniel Benjamin Kaiser, Gitre & McLeod, PLC, Phoenix, AZ, Joe R Keilp, Joe R Keilp Law Office, Phoenix, AZ, Patricia Ann Gitre, Patricia A Gitre, PLC, Phoenix, AZ, for Miguel Rosales, plaintiff.

Edward G Hochuli, William R Jones, Jr, Daniel Patrick Struck, David Conley Lew-

is, Lori A Metcalf, Jones Skelton & Hochuli, PLC, Phoenix, AZ, for defendants.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard Defendants' Motion for Summary Judgment on August 18, 1999. Joe Keilp, Esq., and Patricia A. Gitre, Esq., appeared at the hearing on behalf of Plaintiff; Lori A. Metcalf, Esq., and Daniel P. Struck, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment.

### BACKGROUND

This case arises from a shooting by off-duty police officers. On the evening of June 19, 1993, Defendants Rick Salgado and Leon Lopez, full-time officers with the Phoenix Police Department, were working off-duty as security guards for the Tacos Del Campos Restaurant on the corner of Van Buren and 22nd Streets. While standing outside the restaurant sometime after midnight, the officers heard gunshots. The officers then saw several people, including Plaintiff Miguel Rosales ("Plaintiff"), running through an open field towards the restaurant. The officers observed Plaintiff carrying a gun. Both officers drew their guns and took cover behind the corner of the restaurant.

At this point, the parties' versions of the facts diverge. The officers claim that when Plaintiff ran past them, Officer Lopez yelled, "Stop, Police. Police." The officers allege that Plaintiff then turned and pointed his gun at Officer Lopez. Officer Lopez took cover behind a parked vehicle while Officer Salgado fired his gun at Plaintiff. Officer Lopez then came from behind the vehicle and fired at Plaintiff. The two officers fired at least eight rounds at Plaintiff.

In contrast to the officers' allegations, Plaintiff insists that he never pointed his gun at the officers. Instead, he contends that he continued running away from the officers after he heard them yell. Both parties agree that Plaintiff was shot three times. One bullet struck Plaintiff in the right elbow, traveled down his right arm and lodged in his wrist toward the thumb area. The second bullet struck Plaintiff's right knee, lodging underneath the right knee cap. The third bullet struck Plaintiff in the lower left abdominal area. Plaintiff's expert testified in his deposition that this bullet entered in the area of the kidney and exited through the front. Plaintiff's expert further stated that the forensic evidence regarding Plaintiff's wounds shows that Plaintiff was shot when his back was to the officers. Plaintiff survived the shooting.

After he recovered, Plaintiff was arrested and charged with aggravated assault for having allegedly pointed his gun at Officer Lopez. A jury acquitted Plaintiff of the aggravated assault charge, but found him guilty of disorderly conduct.

On June 19, 1995, Plaintiff filed a Complaint against the officers and the City of Phoenix, alleging civil rights violations under 42 U.S.C. § 1983, in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Liability against the officers is premised on use of excessive force, while liability against the City of Phoenix is based on a policy or practice of excessive force, inadequate investigation of violent incidents, failure to discipline police officers, and/or concealment of violent incidents. Plaintiff subsequently amended his complaint on September 12, 1995.

On October 28, 1997, Defendants filed a Motion for Summary Judgment. The court held a hearing on August 13, 1998, at which time the court granted Plaintiff's request, pursuant to Federal Rule of Civil Procedure 56(f), for additional time to respond to Defendants' motion. Plaintiff has now filed a second motion under Rule 56(f) to continue the hearing on Defendants' summary judgment motion. Because Plaintiff's Rule 56(f) request relates solely to the *Monell* claim against the City of Phoenix, the court will proceed to address the remaining issues raised in Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050 (9th Cir.1995). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The substantive law defines which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact requires more than some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes over outcome determinative facts under the applicable substantive law will preclude the entry of summary judgment. *Id.* If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.), *cert. denied*, 519 U.S. 868, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir.1996).

The Supreme Court cases cited above establish that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 1).

## DISCUSSION

Defendants raise four arguments in support of their motion for summary judgment: 1) Plaintiff's claim that false criminal charges were filed against him is premature; 2) no constitutional violation

occurred; 3) Officers Lopez and Salgado are entitled to qualified immunity; and 4) the City of Phoenix cannot—be liable under the facts of the case. As noted above, the court will reserve ruling on the fourth argument until the Rule 56(f) motion is resolved. The court addresses the remaining three arguments in turn.

## I.  *False Charges/Arrest/Imprisonment*

■ In Paragraph 12 of his Amended Complaint, Plaintiff alleges that Officers Salgado and Lopez ("the officers") filed false criminal charges against him, resulting in his imprisonment. Defendants claim this allegation is premature because Plaintiff was convicted of disorderly conduct as a result of the charges filed against him and that conviction has not been invalidated.

■ Although it is unclear whether Plaintiff's allegations are more akin to those for false arrest or for false imprisonment[1], his claims are barred under either theory by the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and subsequent Ninth Circuit decisions. *Heck* precludes a § 1983 claim based on actions which would "render a conviction or sentence invalid" where that conviction has not been reversed, expunged or called into question by issuance of a writ of habeas corpus. *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364. *"Heck,* in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which § 1983 damages are sought, the 1983 action must be dismissed."

■ To prevail on his § 1983 claim for false arrest and imprisonment, Plaintiff would have to demonstrate that there was no probable cause to arrest him. *See Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir.1998). Plaintiff's conviction for disorderly conduct necessarily implies the existence of probable cause. Because the existence of probable cause is "fundamentally inconsistent" with Plaintiff's false arrest claim, this portion of his § 1983 action is barred. The fact that Plaintiff was acquitted of the aggravated assault charge does not alter this conclusion. *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."). Thus, the court concludes that Defendants are entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims.

## II.  *Excessive Force*

■ The first step in any action under 42 U.S.C. § 1983 is to identify the constitutional right allegedly violated. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The United States Supreme Court has held that all excessive force claims against law enforcement officials in the course of an arrest, investigatory stop or other "seizure" of a person should be analyzed under the Fourth Amendment. *Id.* The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision or hindsight. *Id.* at 396, 109 S.Ct. 1865. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their

---

1. In his amended complaint, Plaintiff alleges that the officers "caused false criminal charges to be filed against Plaintiff, resulting in Plaintiff's imprisonment." In response to Defendants' Motion for Summary Judgment, Plaintiff asserts that "he was unlawfully arrested and detained."

underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865.

If, as Plaintiff contends, he did not point a gun at the officers, but was instead running away at the time he was shot, a jury could certainly find that the officers' use of deadly force was not reasonable. Nonetheless, Defendants argue that Plaintiff's version of the events does not defeat summary judgment because "no reasonable jury would believe Plaintiff's version of the events." In making this argument, Defendants (1) impermissibly ask the court to make credibility determinations, and (2) ignore the evidence presented by Plaintiff's forensics expert.

Defendants also argue that even if Plaintiff did not point his gun at the officers, their use of deadly force was still reasonable, given that the shooting occurred at nighttime in a bad neighborhood where gunfire had earlier erupted. While these "facts and circumstances" must be considered in determining whether the officers' response was reasonable, they do not, as a matter of law, compel such a finding. The Ninth Circuit has held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury. *See, e.g., Liston v. County of Riverside,* 120 F.3d 965, 976 n. 10, 977 (9th Cir.1997) ("It is for the finder of fact to determine the reasonableness of the force used in this case, and that can be done only upon a fully developed record."); *see also Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir.1995); *Forrester v. City of San Diego,* 25 F.3d 804, 806 (9th Cir.1994).

Because the court concludes that a genuine issue of material fact exists as to whether Plaintiff pointed his gun at the officers, the court is unable to conclude, as a matter of law, that the officers' use of deadly force was reasonable. Accordingly, Defendants' motion for summary judgment on the excessive force claim is DENIED.

## III. *Qualified Immunity*

"Officers are entitled to qualified immunity even if they acted unconstitutionally, as long as a reasonable officer could have believed the conduct lawful." *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir.1995). In the context of an excessive force claim, defendants can win on summary judgment if the court, after resolving all facts in favor of the plaintiff, concludes that a reasonable officer could have believed his use of force was reasonable. Because in excessive force cases the issue is whether the officer acted reasonably, the qualified immunity inquiry and the inquiry on the merits are the same. *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir.1994).

As discussed above, viewing, as the court must, the evidence in the light most favorable to Plaintiff, a jury could find that a reasonable officer would have known that the use of deadly force violated Plaintiff's clearly established Fourth Amendment right to be free from excessive force. *See Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (holding that police use of excessive force is an established constitutional violation). Defendants argue that the officers fired "to prevent Plaintiff from killing or harming Officer Lopez, not simply to prevent Plaintiff's escape." This argument ignores the fact that these material facts are disputed.

Defendants also argue that the Ninth Circuit's decision in *Forrett v. Richardson,* 112 F.3d 416, 419 (9th Cir.1997), compels the conclusion that the officers' use of deadly force was objectively reasonable. In *Forrett,* police officers in Riverside, California shot at the plaintiff, who was suspected of committing a violent home invasion several hours earlier, as he attempted to escape. The Ninth Circuit held that "if the suspect threatens the officer with a weapon or there is probable cause to be-

lieve that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." The facts in *Forrett* were far more egregious than those here: the suspect had violently entered the victims' home; tied up the three occupants; shot one at point blank ranqe; shot at another; and then escaped, taking with him several firearms and 250 rounds of ammunition. *Id.* at 418. One of the victims provided eyewitness testimony to the police, linking the suspect to the crime. In light of these facts, and the fact that the suspect "used every desperate means at his disposal to elude capture for almost an hour of hot pursuit," the court held that it was objectively reasonable for the police officers to have used deadly force. *Id.* at 421.

The facts in this case do not, as a matter of law, demonstrate either that Plaintiff threatened the officers with his weapon or that there was probable cause to believe that he had committed a crime involving the infliction or threatened infliction of serious physical harm. At most, the facts show that prior to shooting Plaintiff, the officers heard gunfire and later saw several people, including Plaintiff, running across an open field. These facts do not necessarily establish the existence of probable cause to believe Plaintiff had just committed a crime, let alone inflicted or threatened serious bodily injury. Plaintiff may have displayed his weapon in self defense or been running from an assault. Therefore, the *Forrett* case does not lead to the conclusion that the officers' use of deadly force was objectively reasonable.

Thus, the court cannot conclude, as a matter of law, that a reasonable officer would have believed that the use of deadly force under these facts and circumstances was lawful. Accordingly, the qualified im-

munity portion of Defendants' summary judgment motion is DENIED.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. Defendants are entitled to summary judgment on Plaintiff's false charges/false arrest/false imprisonment claim. However, because genuine issues of material fact exist as to whether Plaintiff pointed his gun at the officers and whether the officers' use of deadly force was reasonable, Defendants are not entitled to summary judgment on either Plaintiff's excessive force claim or the issue of qualified immunity.

IT IS SO ORDERED.