# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10169

United States Court of Appeals
Fifth Circuit

**FILED**
January 24, 2020

Lyle W. Cayce
Clerk

JANE CUMMINGS,

      Plaintiff - Appellant

v.

PREMIER REHAB KELLER, P.L.L.C., doing business as Premier Rehab, P.L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
Northern District of Texas, Fort Worth Division

Before STEWART, CLEMENT, and HO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Jane Cummings sued federal funding recipient Premier Rehab Keller, P.L.L.C. ("Premier") for disability discrimination. Cummings sought equitable relief and damages under the Americans with Disabilities Act, the Rehabilitation Act, the Patient Protection and Affordable Care Act, and the Texas Human Resources Code. Premier filed a motion to dismiss Cummings's claims for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. The district court granted Premier's motion, reasoning that, though Cummings had standing to sue, she failed to state a plausible claim for damages under any of the cited statutes, and that she failed

No. 19-10169

to allege facts supporting her standing to seek equitable relief. Cummings appealed. We AFFIRM the district court's judgment.

I.

Cummings has been deaf since birth and is legally blind. She has difficulty speaking, reading, and writing in English; she primarily communicates in American Sign Language ("ASL"). In October 2016, she contacted Premier, which offers physical therapy services, to treat her chronic back pain. She requested that Premier provide an ASL interpreter. Premier refused, but told her that she could communicate with the therapist using written notes, lipreading, and gesturing, or bring her own ASL interpreter. Cummings told Premier she couldn't communicate using those methods, and as a result, she went to another physical therapy provider. She alleged that the other provider's care was "unsatisfactory." Cummings contacted Premier twice more to request an interpreter, for a total of three requests between 2016 and 2017. Cummings also alleged Premier "told her to look for a different physical therapy center that provided interpreters." Although she received treatment at the other facility, Cummings says she was "forced to live with ongoing back pain as a result of her inability to receive quality therapy services," and still wishes to receive treatment from Premier.

Cummings sued Premier for disability discrimination, seeking injunctive relief and damages. She alleged that Premier violated the Americans with Disabilities Act ("ADA") of 1990 § 302, 42 U.S.C. § 12182; the Rehabilitation Act ("RA") of 1973 § 504, 29 U.S.C. § 794; the Patient Protection and Affordable Care Act ("ACA") of 2010 § 1557, 42 U.S.C. § 18116; and the Texas Human Resources Code § 121.003, TEX. HUM. RES. CODE § 121.003.

Premier moved to dismiss these claims, contending that Cummings lacked standing to sue and failed to state a claim upon which relief could be

No. 19-10169

granted.[1] The district court granted Premier's motion. In dismissing her claim for equitable relief for lack of subject matter jurisdiction, the court first observed that "Cummings did not allege standing to seek equitable relief . . . [though] she did allege standing to seek damages." The court then dismissed her damages claims. It first noted that damages are not recoverable under Title III of the ADA.[2] The court then held that emotional distress damages are unavailable under § 504 of the RA and § 1557 of the ACA. Finally, though the court could not definitively conclude that Cummings sought to amend her complaint, it denied her request to amend for failing to comply with the local rules and procedures, and because she had a fair opportunity to plead her best case. Cummings now seeks review of the district court's judgment that damages for emotional distress are unrecoverable under the RA and the ACA.[3]

## II.

We review the district court's grant of a motion to dismiss de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir. 2015) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)); *see* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Further, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted

---

[1] In her response to Premier's motion to dismiss, Cummings withdrew her Texas-law claim.

[2] The district court held that "[t]he only compensable injuries that Cummings alleged Premier caused were 'humiliation, frustration, and emotional distress.'"

[3] Cummings does not appeal the district court's holding that she failed to allege standing to seek equitable relief or that damages are unrecoverable under Title III of the ADA.

No. 19-10169

unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (citations omitted).

## III.

The issue before us today is whether emotional distress damages are available under the RA and the ACA. There is no controlling Fifth Circuit or Supreme Court precedent on this issue. The district court held that emotional distress damages are "like punitive damages," in that damages for emotional distress (i) "do not compensate plaintiffs for their pecuniary losses, but instead punish defendants for the outrageousness of their conduct," and (ii) "are also unforeseeable at the time recipients accept federal funds and expose them to 'unlimited liability.'" *Cummings v. Premier Rehab, P.L.L.C.*, No. 4:18-CV-649-A, 2019 WL 227411, at *4 (N.D. Tex. January 16, 2019) (citations omitted). Cummings argues that this is incorrect.

Section 504 of the RA states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Federal-funding recipients such as Premier "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2). To state a § 504 claim, "the plaintiff must establish that disability discrimination was the sole reason for the exclusion or denial of benefits." *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019). Further, pursuant to § 1557 of the ACA, "an individual shall not, on the ground prohibited under . . . [§ 504 of the RA], be excluded from participation in, be denied the benefits of, or be

No. 19-10169

subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).

Section 504 of the RA and § 1557 of the ACA are Spending Clause legislation. *See Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 348 (5th Cir. 2005) (§ 504 of the RA); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 575–77, 588 (2012) (plurality opinion) (§ 1557 of the ACA). The Court has "repeatedly" likened Spending Clause legislation to contract law— "in return for federal funds, the [recipients] agree to comply with federally imposed conditions." *Barnes v. Gorman*, 536 U.S. 181, 186 (2002) (alteration in original) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)); *see, e.g., Pennhurst*, 451 U.S. at 17 (holding that Spending Clause legislation is like a "contract," in that "[t]he legitimacy of Congress' power to legislate under the spending power . . . rests on whether the [federal-funding recipient] voluntarily and knowingly accepts [the contract's] terms"). And in cases in "which funding recipients may be held liable for money damages," the Court has "regularly applied the contract-law analogy," including, like here, in "private suits under Spending Clause legislation." *Barnes,* 536 U.S. at 186–87; *see also Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (holding that in addition to injunctive relief, monetary damages can be available as a remedy in private suits under Spending Clause legislation). But the Court has also made clear that not "*all* contract-law rules apply to Spending Clause legislation." *Barnes,* 536 U.S. at 186–87.

In *Barnes v. Gorman*, the Court explained that compensatory damages are available under Spending Clause legislation because federal-funding recipients are "on notice" that accepting such funds exposes them to liability for monetary damages under general contract law:

> [A] remedy is "appropriate relief," only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to

liability of that nature. A funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies *traditionally available* in suits for breach of contract. Thus we have held that under [a Spending Clause statute], which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages.

*Id.* at 187 (citation omitted) (second emphasis added). The Court then addressed whether *punitive damages* are available under Spending Clause legislation. It held that, because "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract," *id.* at 187, federal funding recipients are not "on notice" that they could be liable for such damages. *See id.* at 188  ("Not only is it doubtful that funding recipients would have agreed to exposure to such unorthodox and indeterminate liability; it is doubtful whether they would even have *accepted the funding* if punitive damages liability was a required condition.").

The Supreme Court reiterated that not all contract-law principles apply to Spending Clause legislation in *Sossamon v. Texas*, 563 U.S. 277 (2011). There, the Court again stressed that Spending Clause legislation is merely *analogous* to contract law—they are not one and the same. *See Barnes*, 536 U.S. at 186 ("[W]e have been careful not to imply that all contract-law rules apply to Spending Clause legislation."). The Court explained

> [Plaintiff] contends that, because Congress enacted [the statute at issue] pursuant to the Spending Clause, the [defendants] were necessarily on notice that they would be liable for damages. [Plaintiff] argues that Spending Clause legislation operates as a contract and damages are always available relief for a breach of contract . . . .
>
> We have acknowledged the contract-law analogy, but we have been clear "not [to] imply . . . that suits under Spending Clause legislation are suits in contract, or that contract-law principles apply to all issues that they raise." . . . [I]n *Barnes* and

*Franklin*, the Court discussed the Spending Clause context only as a potential *limitation* on liability.

*Id.* at 289−90 (quoting *Barnes*, 536 U.S. at 189 n.2).

Thus, the Supreme Court has made clear that the fundamental question in evaluating damages in the context of Spending Clause legislation is whether "the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature." *Barnes,* 536 U.S. at 187. If funding recipients are not "on notice" for such liability, that remedy is not "appropriate relief." *Id.*

We agree with the district court that Premier was not "on notice" that it could be held liable, under the RA or the ACA, for Cummings's emotional distress damages. Because emotional distress damages, like punitive damages, are traditionally unavailable in breach-of-contract actions, we hold that Premier was not "on notice" that it could be liable for such damages. *See* RESTATEMENT (SECOND) OF CONTRACTS § 353 cmt. a ("Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure."); *see also Barnes*, 536 U.S. at 187 (noting that funding recipients are "on notice" for "those remedies traditionally available in suits for breach of contract," and that funding recipients are not "on notice" for punitive damages because they "are generally not available for breach of contract").

Cummings points to two rare exceptions to the general rule that emotional distress damages are not available for breach of contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 353 cmt. a ("There are, however, two exceptional situations where such damages are recoverable."). The first exception allows plaintiffs to recover emotional distress damages where the "[emotional] disturbance accompanies a bodily injury"—i.e., a so-called tort exception. *Id.* The second exception, which Cummings argues applies here, permits a plaintiff to recover emotional distress damages when the contract or

breach is such that the plaintiff's "serious emotional disturbance was a "*particularly likely* result." *Id.* (emphasis added).

The Supreme Court made clear in *Barnes* and *Sossamon* that the contract-law analogy is only a metaphor. *See Barnes*, 536 U.S. at 187–88; *see also Sossamon*, 563 U.S. at 290. "[C]ontract-law principles [do not] apply to all issues that [suits under Spending Clause legislation] raise." *Barnes*, 536 U.S. at 189 n.2; *see also Sossamon*, 563 U.S. at 290. Thus, that contract law has exceptions to the general prohibition against emotional distress damages does not mean that we are obligated to apply those exceptions. Indeed, the Supreme Court cautions against it. The issue is whether funding recipients are "on notice."

The Restatement's "exceptional situation" exception that Cummings cites to does not put funding recipients "on notice." Given the general prohibition against emotional distress damages in contract law, funding recipients are unlikely to be aware that such an exception exists, let alone think that they might be liable under it.[4] Further rarefying this exception is its requirement that the emotional damage caused be "serious" and "*particularly* likely." RESTATEMENT (SECOND) OF CONTRACTS § 353 (emphasis added). Thus, funding recipients are not "on notice" that they might be liable for such a rare and narrow exception to the prohibition of emotional distress damages.

Moreover, contract law also has exceptions for awarding punitive damages for breach of contract. *See id.* § 355, cmts. a, b. But *Barnes* nevertheless held that funding recipients were not "on notice" that they might

---

[4] We note that we find only three mentions of this exception in case law within the Fifth Circuit. *See Dean v. Dean*, 821 F.2d 279, 281–83 (5th Cir. 1987); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7–12 Litig.*, 517 F. Supp. 2d 832, 850–52 (E.D. La. 2007); *Jones v. Benefit Tr. Life Ins. Co.*, 617 F. Supp. 1542, 1548 (S.D. Miss. 1985).

No. 19-10169

be liable for punitive damages. Despite the existence of such exceptions, *Barnes* stuck to the general rule, which prohibits punitive damages. We see no reason to go down the rabbit-hole of "exceptions" to the general rule that emotional distress damages are unavailable for breach of contract when the Court in *Barnes* did not do so with regard to punitive damages. Because punitive damages are unavailable for a funding recipient's "breach" of its Spending Clause "contract," despite the existence of exceptions to the general prohibition against such damages, we likewise hold that emotional distress damages are unavailable for a funding recipient's "breach" of the RA or the ACA, despite the existence of exceptions. In neither situation is "the funding recipient . . . *on notice* that, by accepting federal funding, it exposes itself to liability of that nature." *Barnes*, 536 U.S. at 187.

IV.

Cummings's brief relies heavily on the Eleventh Circuit's decision in *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007). With *Sheely*, the Eleventh Circuit became the only circuit to address whether emotional distress damages may be recovered under the RA. There, an MRI facility refused to allow a legally blind woman to bring her guide dog with her to a waiting room to accompany her minor son. *Id.* at 1178–79. The court held that "emotional distress is a foreseeable consequence of funding recipients' 'breach' of their 'contract' with the federal government not to discriminate against third parties . . . they therefore have fair notice that they may be subject to liability for emotional damages." *Id.* at 1198. The court first explained that, "[a]s a matter of both common sense and case law, emotional distress is a predictable, and thus *foreseeable*, consequence of [intentional] discrimination." *Id.* at 1199 (emphasis added). And unlike punitive damages, which the court reasoned "'may range in orders of "indeterminate magnitude," untethered to compensable harm . . .' emotional damages . . . are designed to

9

make the plaintiff whole, and therefore bear a significant and altogether determinable relationship to events in which the defendant . . . participated and could have foreseen." *Id.* at 1199−1200 (citations omitted) (quoting *Barnes*, 536 U.S. at 190−91 (Souter, J., concurring)).

We disagree with *Sheely*'s reasoning, which is based on the supposed "foreseeability" of emotional distress damages. The court claims "foreseeability" is a "basic and longstanding rule of contract law"—"that '[d]amages are not recoverable for loss that the party in breach did not have reason to *foresee* as a probable result of the breach when the contract was made.'" *Sheely*, 505 F.3d at 1199 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 351 (alteration in original) (emphasis added)). While we don't dispute that "foreseeability" may be a general concept of contract law, we find that *Sheely*'s reliance on it is misplaced.

That is because *Sheely* conflates two distinct "foreseeability" issues. The first is whether federal funding recipients were "on notice"—i.e., did they know that, when they accepted their funding, they were agreeing to be liable for emotional distress damages. The second is whether a funding recipient can foresee that a patient might suffer an emotional injury as a result of its actions. Put differently, whether funding recipients can foresee a consequence of a particular "breach" of a Spending Clause "contract" is not the same as whether they are "on notice" that, when they accepted funding, they agreed to be liable for damages of this kind. *Barnes* addressed the "on notice" issue, finding that federal funding recipients couldn't "foresee" their liability for punitive damages for a breach of Spending Clause "contract," because such damages are generally unavailable under contract law. Nowhere in *Barnes* does the Court condone *Sheely*'s strand of "foreseeability."

As the Court explained in *Sossamon*—decided almost four years after *Sheely*—the contract-law analogy is a "limitation on liability." 563 U.S. at 290.

But the "foreseeability" rule *Sheely* applies would expand funding recipients' liability. Thus, we do not believe that it is in our power today to *expand* the Spending Clause contract-law analogy, as Cummings wishes, which would expose federal funding recipients to *greater* liability.

Finally, Cummings echoes *Sheely*'s reasoning that emotional distress damages should be allowed for breach of contract because "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, *federal courts may use any available remedy to make good the wrong done.*" *Bell v. Hood*, 327 U.S. 678, 684 (1946) (emphasis added). Although *Barnes* addressed this rule, it did so in order to reconcile the rule with its holding:

> Our conclusion is consistent with the "well settled" [*Bell v. Hood*] rule . . . . When a federal-funds recipient violates conditions of Spending Clause legislation, the wrong done is the failure to provide what the contractual obligation requires; and that wrong is "made good" when the recipient *compensates* the Federal Government or a third-party beneficiary (as in this case) for the loss caused by that failure.

*Barnes*, 536 U.S. at 189. *Sheely* says that, because emotional distress damages are foreseeable where a federal funding recipient engages in intentional discrimination, the "Court's concern with notice in awarding remedies for violations of Spending Clause legislation—which operates as a constraint on the *Bell v. Hood* presumption—is . . . satisfied, and we are obliged to adhere to *Bell*'s presumption that we may award 'any available remedy to make good the wrong done.'" *Sheely*, 505 F.3d at 1204 (quoting *Bell*, 327 U.S. at 684). But, as we have explained, because federal funding recipients are not "on notice" that their "contractual obligation" can expose them to liability for emotional distress damages, the Court's "constraint on the *Bell v. Hood* presumption" applies here. *Id. Sheely* attempts to use the *Bell* rule as an end-run around the Supreme Court's limitations on the contract-law analogy. But *Barnes* accounts

for *Bell*, while limiting the remedies available for such suits. In sum, we find that the *Bell* rule is not a vehicle for importing remedies that have already been rejected.

## V.

Because emotional distress damages are not available under the RA or the ACA, we AFFIRM the district court's dismissal of Cummings's claims.