NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MICHAEL ASFALL, <br><br>        Plaintiff-Appellee, <br><br>   v. <br><br> LOS ANGELES UNIFIED SCHOOL DISTRICT, <br><br>        Defendant-Appellant. | No.   20-55599 <br><br> D.C. No. <br> 2:18-cv-00505-CBM-RAO <br><br><br> MEMORANDUM* |
| MICHAEL ASFALL, <br><br>        Plaintiff-Appellee, <br><br>   v. <br><br> LOS ANGELES UNIFIED SCHOOL DISTRICT, <br><br>        Defendant-Appellant, <br><br>  and <br><br> JAN MURATA, an individual; et al., <br><br>        Defendants. | No.   20-56259 <br><br> D.C. No. <br> 2:18-cv-00505-CBM-RAO |

Appeal from the United States District Court

---

     *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Submitted April 15, 2022[**]
Pasadena, California

Before: SMITH,[***] BADE, and LEE, Circuit Judges.

Los Angeles Unified School District ("LAUSD") appeals the district court's orders (1) denying LAUSD's post-trial motions for judgment as a matter of law or a new trial under Federal Rules of Civil Procedure 49 and 50 and (2) granting Michael Asfall's untimely fee motion. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

Asfall, a girls' soccer coach at an LAUSD school, sued LAUSD, Jan Murata (the school's principal), and Brian Groven (the school's athletic director) after his termination by Murata. The two claims that survived summary judgment were a retaliation claim under Title IX and a whistleblower retaliation claim under California Labor Code Section 1102.5. The crux of these claims was that Asfall was terminated because he opposed and complained about the allegedly unequal treatment of the girls' soccer program. Murata's proffered legitimate reason for

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable D. Brooks Smith, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

terminating Asfall was his involvement in a physical altercation among several athletics coaches. The jury returned a verdict for Asfall on the Title IX retaliation claim, along with an award of $100,000 in non-economic damages for emotional distress, and in favor of LAUSD on the Section 1102.5 claim. In the verdict form, the jury indicated that Asfall engaged in protected conduct under Title IX but also that he did not have a reasonable belief that his complaint disclosed a violation of Title IX.

LAUSD argues that the jury's Title IX verdict was inconsistent with the jury's finding that Asfall did not have a reasonable belief that his complaint disclosed a violation of Title IX. LAUSD also contends that there was no evidence presented at trial to support a causal link between Asfall's protected activity and his termination. Finally, LAUSD argues that the district court abused its discretion when it excused the untimeliness of Asfall's fee motion. We reject all of these arguments.

1. The jury verdict was not irreconcilably inconsistent with the jury's findings. We review de novo the district court's determination under Rule 49(b) whether the general verdict is consistent with the special interrogatories. *Wilks v. Reyes*, 5 F.3d 412, 415 (9th Cir. 1993) (as amended). Under Rule 49, when the jury's answers to interrogatories are inconsistent with the verdict, the district court may order a new trial. Fed. R. Civ. P. 49(b)(3). But the "power to invoke Rule 49(b) is not without limits." *Wilks*, 5 F.3d at 415. Rather, "when there is tension between a general verdict

and written interrogatories the district court must attempt to sustain the judgment by harmonizing the answers and the verdict." *Id.* We "must attempt to reconcile the jury's findings, by exegesis if necessary . . . before we are free to . . . remand the case for a new trial." *Gallick v. Balt. & Ohio R.R.*, 372 U.S. 108, 119 (1963). In doing so, we evaluate the jury's answers "in the context of the charge and the total context of the special verdict." *Id.* at 121.[1]

In this case, the jury's verdict and its answers can be reconciled "in the context of the charge and the total context of the special verdict." *Id.* For the Title IX claim, the jury was instructed that an employee is protected when he or she "opposes employment practices that the employee reasonably believes to be discrimination under Title IX . . . whether or not the practice is actually discriminatory." The instruction also stated that "[t]he employee does not need to be aware that the practice is unlawful under Title IX at the time the employee opposed the employment practice in order to be protected." In contrast, the instruction for the Section 1102.5 claim stated that "Plaintiff must have reasonably believed that Defendant's policies

---

[1] The parties and the district court agreed that the case is governed by Rule 49(b) which concerns "General Verdict with Answers to Written Questions." Because the jury verdict form in this case did not require the jury to make a general verdict but the questions required the jury to apply law to its factual determinations, rather than merely answer factual questions, the form falls somewhere between Rule 49(a), which concerns "Special Verdict," and Rule 49(b). *See Flores v. City of Westminster*, 873 F.3d 739, 756 (9th Cir. 2017). In any event, the Court's obligation to reconcile seemingly inconsistent findings is comparable to its duty under Rule 49(b). *See id.* (citing *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991)).

violated federal statutes, rules, or regulations." Based on these instructions, the jury could have reasonably concluded that Asfall needed to believe that the policies he was opposing were a violation of Title IX for the Section 1102.5 claim but not for the Title IX claim.

Further, the jury could have relied on Asfall's trial testimony to reasonably reach these divergent findings. Asfall testified that he believed the treatment of the girls' team was "wrong" and "illegal" but he also stated that was not thinking specifically about Title IX when making his complaints. From this testimony, the jury could have reasonably concluded that Asfall believed he was complaining about a discriminatory policy but not that he was complaining about a Title IX violation.

LAUSD invokes "applicable case law" to argue that the state and federal claims have the same requirement of "reasonable belief." But the jury was not answering the questionnaire based on its analysis of the case law; rather, its view of the relevant standards was informed by the court's instructions on the law. And at no point did LAUSD argue that the district court's jury instructions were incorrect. On the contrary, in this appeal, LAUSD affirms that the instructions the court gave were correct.

In sum, because the jury's answers can be reasonably reconciled with each other and the verdict based on the jury charge and the testimony presented during the trial, we affirm the district court's denial of LAUSD's motion under Rule 49. *See*

5

*White v. Ford Motor Co.*, 312 F.3d 998, 1005 (9th Cir. 2002) ("In an inconsistent verdict case, a court asks, not whether the verdict necessarily makes sense under any reading, but whether it can be read in light of the evidence to make sense."), *amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003).

2. Substantial evidence supports the jury's conclusion that Asfall's complaints were the cause of his termination. We review de novo the district court's denial of a Rule 50(b) renewed motion for judgment as a matter of law. *White*, 312 F.3d at 1010. The test is whether "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *Forrett v. Richardson*, 112 F.3d 416, 419 (9th Cir. 1997), *superseded by rule on other grounds as stated in Chroma Lighting v. GTE Prods. Corp.*, 127 F.3d 1136 (9th Cir. 1997) (order).

Under Title IX, "[c]ausation sufficient to establish . . . the prima facie case [of retaliation] may be inferred from . . . the proximity in time between the protected action and the allegedly retaliatory employment decision." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 726-27 (9th Cir. 2012) (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006)) (fourth alteration in original). "Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986). "If the employer

6

successfully rebuts the inference of retaliation that arises from establishment of a prima facie case, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination." *Id.*

In this case, the testimony at trial supports a causal connection between Asfall's complaints and his termination by Murata because the jury could have concluded from the trial evidence that there was a temporal connection and that Murata's proffered legitimate explanation was pretextual. LAUSD contends that there was insufficient evidence that Murata knew about Asfall's complaints, but the trial testimony allowed the jury to find that Murata knew that Asfall engaged in protected activity under Title IX. Specifically, Asfall testified that he told Murata that he believed that the girls' soccer team was being treated unfairly in comparison to the boys. Murata also confirmed that she knew that Asfall was making complaints about resources for the girls' team, though she did not think they were Title IX complaints per se. Still, from this testimony, the jury could reasonably conclude that Murata knew about Asfall's complaints about unequal treatment of the girls' soccer team.

Moreover, Murata testified that she learned that the boys' basketball coach felt persecuted at the meeting that led up to the altercation. Another coach testified that Asfall was one of the people making statements at the meeting. From this testimony, the jury could reasonably infer that Murata learned that Asfall was among

those who accused the boys' basketball coach of receiving favorable treatment for his team shortly before she terminated him. The evidence thus supports temporal connection between Asfall's protected activity and his termination.

Finally, Murata's explanation of her decision to terminate Asfall could be seen as not credible. *See Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995) (stating that to show pretext, a plaintiff "must produce evidence of facts that either directly show a discriminatory motive or show that the [defendant's] explanation for [the adverse action] is not credible"). Murata testified that she terminated Asfall for his participation in the physical altercation based on the "zero tolerance" policy. But Murata admitted that some witnesses described Asfall as a "peacemaker" in the situation and that the code of conduct in fact required the coaches to intervene and stop fights. And Murata did not terminate the girls' basketball coach who threw punches in the altercation. From this testimony, the jury could reasonably conclude that Murata's professed reason for Asfall's termination was not credible and thus pretextual.

In sum, because substantial evidence presented at trial supports the jury's finding that Asfall's protected activity caused his termination, we affirm the district court's denial of LAUSD's motion under Rule 50.

3. The district court did not abuse its discretion in excusing the untimeliness of Asfall's fee motion. We review the district court's decision that a party failed to

8

act timely because of excusable neglect for an abuse of discretion. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). A court may hear and decide an untimely motion if the party failed to timely act because of excusable neglect. Fed. R. Civ. P. 6(b). To determine whether the neglect is excusable, a court must consider four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000).

In this case, the district court did not abuse its discretion in excusing Asfall's neglect to file a timely fee application. The district court concluded that (1) there was no prejudice to LAUSD that resulted from the delay, (2) the length of the delay was shorter than what we have found to be reasonable, (3) the reason was because of counsel's confusion about the automatic entry of judgment rule, and (4) there was no bad faith as counsel acted right after learning of the mistake. None of these reasons are illogical, implausible, or without support in the record. *See Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam). We affirm the district court's decision. *See In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 972–74 (9th Cir. 2007).

4. We decline to consider LAUSD's argument that emotional distress damages are not available under Title IX, which it raised for the first time—after the

9

case was submitted—when the Supreme Court decided in *Cummings v. Premier Rehab Keller, P.L.L.C.* that "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes," 142 S. Ct. 1562, 1576 (2022) (addressing Rehabilitation Act and Affordable Care Act).

"Our general rule is that we will not consider issues raised for the first time on appeal," *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990), and we "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). While an intervening change in the law is a recognized ground for excusing forfeiture of an issue, *see Carlson*, 900 F.2d at 1349, LAUSD "has not shown the law changed in such a manner that [it] could not have made [the new argument] earlier," *Robinson v. Kramer*, 588 F.3d 1212, 1217 (9th Cir. 2009).

To start with, there was no binding Ninth Circuit precedent that foreclosed a challenge to noneconomic damages under Title IX during the trial or on appeal. Furthermore, the Supreme Court's general statement about the availability of damages under Title IX in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992), did not "describe the scope of 'appropriate relief'" under Title IX, *Barnes v. Gorman*, 536 U.S. 181, 185 (2002), much less establish that noneconomic damages are available, *Cummings*, 142 S. Ct. at 1570. On the contrary, the Supreme Court's conclusion in *Barnes* that a Spending Clause funding recipient is only

10

subject to "those remedies traditionally available in suits for breach of contract," 536 U.S. at 187, signaled the viability of arguments against noneconomic damages under Spending Clause legislation. The defendants in *Cummings v. Premier Rehab Keller, P.L.L.C.*, took note of this and ultimately prevailed. 948 F.3d 673, 678 (5th Cir. 2020), *aff'd*, 142 S. Ct. at 1576. By the time the Fifth Circuit decided *Cummings*, LAUSD should have known that the argument against noneconomic damages under Title IX was viable. By not raising the argument sooner even though it could have, LAUSD forfeited it.

**AFFIRMED.**